RINGWOOD COMPANY, APPELLANT, v. NORTH JERSEY DISTRICT WATER SUPPLY COMMISSION, RESPONDENT.

Argued May 24, 1928—Decided October 15, 1928.

For the appellant, *Edgar W. Hunt, William I. Lewis* and *John Milton.*

For the respondent, *Spaulding Frazer, John A. Matthews* and *Frank A. Sommer.*

The opinion of the court was delivered by

BLACK, J. This is a condemnation case, on appeal from the Passaic Circuit Court. The controversy involves two thousand three hundred and fifty-four acres of land. The land lies in the Wanaque valley, along the Wanaque river, in Passaic county, New Jersey. It was condemned as a part of the site for the Wanaque reservoir, now under construction. The trial of the case was before Judge Newton H. Porter and a struck jury. It resulted in a verdict for the landowner, the appellant, for $711,267.45. Both sides appealed from the award made by the condemnation commissioners to the Passaic Circuit Court. The grounds of appeal in this court are sixty-one in number.

The record is voluminous. It consists of two thousand two hundred and twenty-eight printed pages. The grounds of appeal are, however, grouped and argued under twelve heads in the appellant's brief.

At the outset the appellant complains that by the rulings of the trial court, "the jury was compelled to determine the

value of two thousand three hundred and fifty-four acres of land condemned for water supply purposes without having heard a single word of testimony concerning its market value for that purpose." "The jury was deprived of hearing a single word of testimony concerning the value of the property by reason of its containing beds of sand, and gravel having a superficial area of four hundred and fifty acres." The rulings of the trial court and the charge to the jury were in harmony with the cases of *Currie* v. *Waverly, &c., Railroad Co.,* 52 *N. J. L.* 381; *In re Morris, &c., Dredging Co.,* 96 *Id.* 248, in this court, and the case of *Ross* v. *Commissioners of the Palisades Interstate Park,* 90 *Id.* 461; in the Supreme Court. But, it is alleged, a misapplication of the rules stated in those cases was made by the trial judge to classes of testimony and to specific questions; hence, the alleged trial errors.

These criticisms are the subject of the fifth and ninth points in the appellant's brief. The first are the subject of the eighteenth, nineteenth, twentieth, twenty-ninth and thirtieth grounds of appeal. The second falls under numbers thirty-five to fifty-five of the grounds of appeal.

As to the first, the specific ruling that was made to which an exception was taken, was to a question put to the witness Mr. Cornelius C. Vermeule, a distinguished expert hydraulic and water supply engineer; that question was: Number nineteen, "What in your opinion was the market value of the property being taken on the 19th of March, 1925, in the state and condition in which it then was?" The same ruling was applied to like questions put to two other witnesses, Robert E. Horton and Clyde L. Potts, water supply engineers, called as witnesses numbers twenty-nine and thirty. The basis of the ruling was, that it did not appear that the witnesses knew anything about the value of the lands from a money standpoint. It was not shown that they had any knowledge as to the market value of the lands. They had neither made sales or purchases of other similar lands in the neighborhood of this land, nor had they knowledge of such sales by others. This ruling was not error, under a long line of cases in our

reports, which are collected in the case of *Ross* v. *Commissioners of the Palisades Interstate Park, supra;* under these decisions, what are the requisite qualifications for a witness to testify as an expert on the value of land must be left very much to the discretion of the trial judge; his decision is conclusive unless clearly shown to be erroneous in matter of law. Mr. Vermeule was permitted fully, specifically and at length to set forth the natural advantages of the land —its freedom from population and its availability for water supply development. The character of the supply there capable of being developed—as to demand and proximity to demand, all these and kindred matters were fully brought out in his testimony, along the lines sanctioned by this court in the case of *Currie* v. *Waverly, &c., Railroad Co., supra.* He was permitted to show all the circumstances and elements which might give to the land a commercial value of its own in the immediate present or in reasonable anticipation in the near future. These witnesses did not qualify as experts on land values. We find no reversible error at this point.

Now, as to the second point; witnesses testified specifically and at length, as to the existence on the land under condemnation of large deposits of sand and gravel; then, a series of twenty questions were asked of these witnesses, which were overruled by the trial judge and exceptions noted, numbers thirty-five to fifty-five. The following are fairly illustrative of this series of questions overruled:

"What would you say that the property was worth?"

"Are these lands so located as to be useful in the establishment and carrying on a gravel and sand business?"

"What are the royalties usually payable?"

"What is that sand in the Ringwood gravel lands worth per cubic yard, as it stands in the property," attempting to compare the percentage of gravel in these lands with lands on Long Island.

"Can or cannot the production of gravel on these beds be accomplished at costs no greater than the production of gravel on Long Island?"

"What in your opinion is the value per acre of the sand and gravel lands on the four hundred and fifty acres?"

"What in your opinion is the value of the sand and gravel on the lands at Ringwood?"

The test is, What is the market value of the land condemned for any commercial value of its own in the immediate present, or in reasonable anticipation in the near future? Answers to these questions could not aid the jury in determining this test question. The location, quantity and quality of the sand and gravel were permitted to go to the jury.

These questions are for the most part collateral and contingent, and involve the calculation of costs and profits to such an extent as to fall directly within the ban of this court, in the cases of *In re Morris, &c., Dredging Co., supra; Manda* v. *Orange,* 82 *N. J. L.* 686; or within the case of *Ross* v. *Commissioners of the Palisades Interstate Park, supra.* Valuing land taken under condemnation, underlaid with stone, the stone should not be valued separately and apart from the land, but it may be shown to what extent the land is enhanced in value by the stone. The stone is a component part of the land. So, here the sand and gravel. *Manda* v. *Delaware, &c., Railroad Co.,* 89 *N. J. L.* 327, 329.

Testimony relating to sand and gravel, other than the proof of its existence, its geographical and topographical location, its quality and quantity, is immaterial to the issue, until there be established by testimony of competent witnesses that there was such a demand for the property for that purpose, as materially to affect its market value. We think the trial judge properly applied the principles of the cases cited to the facts, as they appear, in the record of this case. We find no reversible error at this point.

Numbers one and three. Error in the exclusion of evidence relating to the "Ryerson reservations" contained in two deeds, *Exhibit O 41* and *Exhibit O 42* offered first for identification. These involve grounds of appeal numbers eight, nine, eleven, twelve, thirteen and fourteen. Speaking in general terms, the substance of this point is by the rulings objected to, the appellant was prevented from showing the amount of water which by the exercise of the reservations contained in those

deeds could be caused to flow through the lands taken by condemnation, amounting, as alleged, to be twenty-two million of gallons.

To visualize the situation that confronted the trial judge, and to make clear the precise point involved in the rulings, the record shows that the property in question, together with a large acreage of adjacent property, belonged to Jacob M. Ryerson. On March 27th, 1837, he conveyed ten tracts or parcels of land to the Morris Canal and Banking Company. The deed contained the reservation "excepting also;" "expressly reserves to and for himself," &c., "forever, the right of drawing and having at all times from said reservoir through the gates of said new dam so much water as will, with the natural flow of the intermediate streams, be sufficient for all the necessary purposes of a forge with two fires and a saw mill with one saw at the site of his present Long Pond forge and saw mill, he or they being bound to keep said forge and saw mill dam in good repair," &c. On the same day Ryerson executed another deed for four other tracts or parcels of land to the canal company; that deed "expressly reserves for the use and benefit of himself," &c., the right of reconstructing and maintaining the said "Old Dam" and drawing and appropriating the waters of Long Pond," &c.

The lands now in controversy consist of a large part of the Ryerson holdings, descended by mesne conveyances to the Ringwood Company, the appellant.

The rulings upon evidence, which are complained of related to the exclusion of evidence offered for the purpose of showing that the lands taken possessed a special value, by reason of their peculiar fitness for and natural adaptability to the production of hydro-electric power, and for water supply purposes, in connection with the use of the water reserved in the two deeds. It was contended that there was a value to the condemned property, by reason of the fact that the natural flow of this water after use in the forge and saw mill would pass through the lands of the condemned property. The Ryerson rights, or the property where the ancient forge and saw mill were located ninety years ago, were not on the condemned lands.

It will be observed that this reservation, at the time of the trial was ninety years old, that it was out of use, apparently abandoned, and that Long Pond forge was some distance from the land condemned. James P. Anderson, a civil and mining engineer, was called as a witness to prove the daily amount of water required to run the forge and saw mill, as they existed at the time of the making of the reservation in 1837. The claim being that this right of user embraced all of the water held back by the dam—practically twenty-two million gallons per day. In construing a deed it is elementary that it is to be taken most strongly against the grantor. *Dunn* v. *English*, 23 *N. J. L.* 126; see *Johnston* v. *Hyde*, 33 *N. J. Eq.* 632.

The reservation itself indicates an intention on the part of the parties to limit the flow of user, though not the character of user. The forge and saw mill are established as a criterion of quantity only. This testimony was ruled out by the trial judge on the ground that it was too remote and too speculative to be of evidential value, as an aid in ascertaining the market value of the land condemned. So, the testimony of the witness Jay M. Whitham, a hydraulic and power engineer, as to what in the opinion of that witness would have been the quantity of water required for power necessary to operate the works mentioned in the Ryerson reservations, in terms of cubic feet per second and gallons per twenty-four hours, was also properly excluded, because this testimony would necessitate the comparison of the various conditions of water power development, a comparison of the respective amounts of power thus to be developed and the relative economy of such development. Any such testimony necessarily is predicated upon a complete scheme of power development and the opinion of the witnesses in that regard, both as to means of production and as to costs thereof. Nowhere in the record was there any offer made to show any demand for such power, or that the suitability of the lands physically for its development would in any way affect the market value of the lands. Such testimony, transforming as it does, undeveloped territory into power plants with their incidental equipment, falls within

the ban of the cases above cited, viz., *In re Morris, &c., Dredging Co., supra,* and *Manda* v. *City of Orange, supra.* The rule limits the proof to the present condition of the land and uses to which it is naturally adapted, but excludes speculative and possible uses if improvements and changes were made. Matters that are collateral involving calculation of cost and profits are too remote. *Ibid.* It may be further added that his evidence was properly excluded as too remote for the jury's consideration, and that at all events it was within the sound discretion of the trial judge. We find no reversible error at this point.

Number eleven. The court's ruling unlawfully deprived the appellant, the Ringwood company, of the right to open and close the case at the trial before the jury. This point involves grounds of appeal numbers one and two.

The Supreme Court, in the case of *Morris, &c., Railroad Co.* v. *Bonnell,* 34 *N. J. L.* 474, said, a question of practice was also submitted, whether the appellees—the landowners—should have the opening and reply in the management and conduct of the case on appeal. This is a matter of *discretion,* but it is important to have uniformity of practice, the landowner being entitled to the value and damages, and the issue being only of amount, the affirmative of it is more properly upon him, if he appears, than on the company.

In the present case, both parties appealed and appeared at the trial. The appeal of the respondent was first in point of time. We approve and follow the ruling of the Supreme Court in the case cited. The point being a matter of discretion with the trial court, it is not appealable. This cannot be assigned for error. *Bruch* v. *Carter,* 32 *N. J. L.* 554, 557; *Reed* v. *Director-General,* 95 *Id.* 525, 532; *Baunach* v. *Liebman,* 98 *Id.* 554; *Smith* v. *Brunswick Laundry Co.,* 93 *Id.* 436. We find no reversible error in the exercise of the discretion on the part of the trial judge at this point.

We have examined the other points argued in the appellant's brief. We find they are without legal merit and call for no extended discussion. Nnumber two. The appellant was deprived of the right to prove the value of its property

for water supply purposes. This is disposed of adversely to the appellant by what was said under heads numbers five and nine.

Number four. Exclusion of evidence relating to the profits to be made by the city of Newark from the sale of Wanaque water, questions put to a witness, Cornelius C. Vermeule. This is collateral, immaterial and speculative. This involves grounds of appeal numbers fifteen, sixteen and seventeen.

Number six. Exclusion of evidence proving the existence of a demand and value for water supply purposes independent of the condemnor; questions put to a witness Cornelius C. Vermeule. This involves grounds of appeal numbers twenty-one, twenty-two, twenty-three twenty-four and twenty-five. This is disposed of in the opinion.

Number seven. Exclusion of evidence concerning considerations involving the economic law of supply and demand, questions put to a witness Cornelius C. Vermeule. This involves grounds of appeal numbers twenty-six, twenty-seven and twenty-eight. Availability for water supply was permitted to be shown.

Number eight. Exclusion of respondent's official report. This involves grounds of appeal numbers thirty-one, thirty-two, thirty-three and thirty-four, questions put to a witness Robert E. Crockett. This evidence is irrelevant to the market value of the lands in condemnation. It has no evidential value, being a mere opinion of the members of the board without anything to show upon what that opinion was based.

Number ten. Error in admitting a witness Clifford F. McAvoy, on direct examination, to testify regarding purchases by himself and others of shares of stock of a corporation owning property called "Rotten Pond." This involves grounds of appeal numbers fifty-six, fifty-seven, fifty-eight, fifty-nine, sixty and sixty-one. The appellant's counsel called for and challenged the production of this testimony. The court then charged on this subject. The appellant is estopped from now challenging this testimony as error. The court properly explained the testimony to the jury and limited its application.

Number twelve. Error in excluding evidence concerning the grant by the state to appellant, authority to construct five dams and thereby produce five lakes upon the lands involved in the condemnation, questions put to a witness Dr. Henry B. Kummel. This involves grounds of appeal numbers five, six and seven. These consents had never been acted upon. They were immaterial, as bearing upon the question at issue.

Grounds of appeal numbers three and four are abandoned.

The importance of this case seemed to justify a complete survey and statement of all the points involved in the appeal —argued in the appellant's brief.

Finding no error in the record, the judgment of the Passaic Circuit Court is therefore affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.

*For reversal*—None.