45 N.J. Super. 496 (1957)
133 A.2d 28
TENNESSEE GAS TRANSMISSION COMPANY, A CORPORATION OF THE STATE OF DELAWARE, PLAINTIFF-RESPONDENT,
v.
M. MONTGOMERY MAZE AND KATHERINE F. MAZE, HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1957.
Decided June 21, 1957.
*499 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Charles L. Bertini argued the cause for defendants-appellants (Messrs. Randall & Randall, attorneys).
Mr. Irving C. Evers argued the cause for plaintiff-respondent (Mr. Walter H. Jones, attorney).
*500 The opinion of the court was delivered by CONFORD, J.A.D.
This is an appeal by landowners from a judgment on a jury verdict awarding them $7,200 as damages for the condemnation, at the behest of the plaintiff, of an easement in their land for the laying of a pipe line to transport natural gas. A number of rulings by the trial judge sustaining objections to offers of evidence by the defendant landowners are assigned as error.
Defendants own a 65.9 acre tract of undeveloped land containing contiguous parcels respectively situated in the Borough of Montvale and the Township of River Vale, both in this state, and in the Town of Orangeburg, New York. There are 61.11 acres in New Jersey and 4.85 acres in New York. The New Jersey sections are zoned for residential use. The entirety is irregularly "L"-shaped and its westerly and southerly extremities have limited access to paved highways. 1,200 feet of frontage is without road access. The easement taken by plaintiff is 50 feet in width, running diagonally across the property and encompassing an area of some 3.134 acres. For all or most of the length of the easement 35 feet of the width was subject to a pre-existing easement, of a total width of 100 feet, for the erection and maintenance of a high-tension electric line in favor of the Rockland Electric Company, empowering that company to trim, cut and remove all trees and to remove all buildings and obstructions, including longitudinal highways. The Rockland Electric easement also prohibits structures closer than 25 feet to the center line of the strip.
Defendants' only direct valuation evidence to establish its loss consequent upon plaintiff's taking was adduced through a realty expert, Charles Raia, Jr. He concluded the damage was $13,365. He arrived at that estimate by first valuing defendants' property as a whole, without regard to either easement, at $148,500, then deducting 10% to reflect the diminution attributable to the Rockland easement, leaving a remainder of $133,650, and, finally, deducting 10% of the balance to reflect the additional devaluation due to the presently disputed easement, or $13,365. The only basis *501 specifically assigned for his original integral parcel valuation was the sale price of a supposedly comparable tract of 5.5 acres, after allowing for road frontage as to both the parcel sold and the parcel valued. The property sold had intersecting road frontage. No explanation for the basis of the 10% reductions to reflect the diminution of value consequent upon either easement was given by the witness except to say that "I felt that the ten percent deduction for an encumbered piece of property would be a fairly good yardstick to use." Nor could he explain why the second deduction was 10% (i.e., the same percentage as the first easement deduction), having regard to the fact that the prior easement affected 35 feet of the 50-foot width of the subject easement.
Plaintiff offered two real estate experts, one of whom testified that the damage attributable to the taking was $3,000, and the other gave a damage estimate of $3,200.
Under our Constitution and statutes an owner whose property is being taken for such use as has been ordained entitled to be aided by the condemnation process must receive just compensation. Constitution 1947, Art. I, par. 20. Where the owner's entire interest is taken, the measure of compensation is the fair market value. Ringwood Co. v. North Jersey, etc., Comm., 105 N.J.L. 165 (E. & A. 1928). This criterion of value may be otherwise stated as the price which, in all probability, would voluntarily be agreed upon in fair negotiations between an owner willing (but not forced) to sell and a buyer willing (but not forced) to buy. City of Trenton v. Lenzner, 16 N.J. 465, 476 (1954). Where the fee in a part of the owner's property is taken and the taking has diminished the value of the land remaining, the resulting diminution must be included in the compensation to the owner. Sterner v. Nixon, 116 N.J.L. 418, 420 (E. & A. 1936). Where, as here, no part of the land is taken in fee, but only a limited interest in the land, the measure of the owner's damages is the difference in the fair market value of the property before and after the taking. Butler Hard Rubber Co. v. City of Newark, *502 61 N.J.L. 32, 52 (Sup. Ct. 1897). Cf. Central R. Co. v. Bayonne, 51 N.J.L. 428, 430 (Sup. Ct. 1889).
While in some of the decided cases involving condemnation of easements for laying pipe lines the rule is stated in terms of an allowance of compensation for market value of the interest or estate taken in the easement strip plus the diminution in market value of the remainder of the land, Annotation, 38 A.L.R.2d 788, 790 (1954), a more practicable and logically justifiable approach, generally speaking, would be that indicated above, i.e., the difference in market value of the entire tract before and after the taking. As to the easement itself, were it to be valued separately, the controlling consideration would be the owner's loss, not the taker's gain. United States v. Miller, 317 U.S. 369, 375, 63 S.Ct. 276, 87 L.Ed. 336 (1943); United States v. 29.40 Acres of Land, 131 F. Supp. 84, 87 (D.C.N.J. 1955). To segregate the owner's loss by way of the diminution of the value of the fee in the easement strip itself from the diminution of the value of the entire landholding attributable to the taking would ordinarily be impracticable, from an appraiser's standpoint. Consequently the rule in the pipe-line easement cases is most frequently stated in terms of the difference in fair market value of the entire tract before and after the taking. Annotation, op. cit., supra (38 A.L.R.2d, at p. 790). This was the approach taken by all the experts in the present case and was approved in the charge to the jury by the trial court.
As to the specific grievances of the appellants, their major complaint is that the trial judge refused to permit an expert witness to testify concerning the probability of a leak, rupture or explosion in the pipe line, as bearing upon the saleability of the remainder of the tract for residential purposes. Under the circumstances of all of the attendant proofs we do not consider the ruling of the trial court erroneous. Whether or not such an explosion or leak was theoretically probable could not bear upon the market value of the property unless there existed a public fear of such a possibility sufficient to depress the market. *503 See Tennessee Gas & Transmission Co. v. Jackman, 311 Ky. 507, 224 S.W.2d 660 (Ct. App. 1949); Texas Pipe Line Co. v. National Gasoline Co., 203 La. 787, 14 So.2d 636, 638 (Sup. Ct. 1943); Southern Natural Gas Co. v. Norsworthy, 98 F. Supp. 782 (D.C.W.D. La. 1951); Tennessee Gas Transmission Co. v. Adamsen, 262 S.W.2d 445 (Tex. Civ. App. 1953); Penn Gas Coal Co. v. Versailles Fuel Gas Co., 131 Pa. 522, 19 A. 933 (Sup. Ct. 1890). In the present case there was no effort to establish that a general public fear existed in respect to the mooted danger. Also the fact that the defendants' valuation expert did not consider it worth mentioning as a basis for his own estimate of the damages attributable to the taking is of substantial significance. Moreover, the hypothetical question which sought to elicit this information from the expert was in variance from the facts of record in numerous respects. See Fink v. City of Paterson, 44 N.J. Super. 129, 135 (App. Div. 1957).
Defendants complain that they were not allowed to show by an expert witness the extent to which trees were removed by the plaintiff in the laying of the pipe line. We think there was a mistaken exercise of discretion by the trial judge in this respect but that it was not materially prejudicial. Trees and topsoil are a part of the land and cannot be valued separately and apart from the land in this kind of proceeding, but damage thereto incidental to the taking may be taken into consideration to determine to what extent, if any, the value of the land for a fair sale in the market was enhanced by their presence before the taking and consequently diminished by their removal. Manda, Inc. v. Delaware, L. & W.R. Co., 89 N.J.L. 327 (E. & A. 1916); cf. Ross v. Commissioners of Palisades Interstate Park, 90 N.J.L. 461 (Sup. Ct. 1917); Ringwood Co. v. North Jersey, etc., Commission, 105 N.J.L. 165 (E. & A. 1928). The fact and the extent of removal of trees in the present case was material, not per se, but as lending support and quantitative substance to any evidence of the relationship thereof to the alleged effect of the taking upon the market *504 value of the property. In the latter respect, however, there was no proof. Defendants' expert, on cross-examination, said he considered the removal of the trees in formulating his 10% estimate as to the depreciation in value because of the Rockland easement, but he did not refer to trees in connection with his 10% attribution of depreciation on account of the defendants' easement. Were the extent of the damage to the trees presented to the jury without reference to its effect on market value of the land, such evidence could have been of only conjectural value as a basis for comparing the merits of the valuations of the opposing real estate experts or in considering their estimates for purposes of arriving at their own conclusions as to damages.
Defendants suggested at the argument that had this proof (and other excluded evidence) been allowed in evidence at the trial, their real estate expert would have reflected the information in his valuations and arrived at a higher estimate of damages. Nothing in the record persuades us that this supposition is well founded. A real estate expert is entitled to and should give his opinion of value upon the basis of all factors which he believes actually exert an influence upon market value, whether or not they are hearsay in the ordinary sense of the word, and he may and should, in support of his valuation, state such factors. Delaware, L. & W.R. Co. v. City of Hoboken, 16 N.J. Super. 543, 557 (App. Div. 1951), reversed on another ground, 10 N.J. 418 (1952). The court will receive such supporting data for the opinion of an expert "if the circumstances carry a strong likelihood" that the facts upon which the witness is relying are the truth. Ibidem. We are satisfied that the 10% estimate of damage by defendants' valuation witness was based upon all of the circumstances surrounding this taking of which he had knowledge and that the estimate would not have been different even if all of the presently disputed evidential data had been admitted in evidence by the trial court. No intimation to the contrary is found in the testimony of the witness or was suggested by counsel at the trial. Moreover, the amount of the jury verdict indicates *505 that the estimate of this witness exerted substantial weight with the jury. Furthermore, in considering the possibly prejudicial effect of the exclusion complained of, we must weigh the fact that the underlying easement of the Rockland Electric Co. as to 35 feet of the easement width included the right of tree removal.
There was considerable effort by defendants to prove the costs and expenses to which they would be put, if and when they undertook to construct a residential development on the property, by reason of the existence of the underground pipe; also the extent to which its presence would affect prospective streets and roads in such a development and cause a reduction of available building lots. These offers were rejected, upon objection by plaintiff, presumably as contemplating a remote contingency. The pertinent rule is that while the inquiry as to market value may have in contemplation circumstances and conditions then existing or reasonably to be anticipated in the near future, yet the effect of a taking upon "speculative and possible uses if improvements and changes" were made is immaterial if deemed remote. Manda v. City of Orange, 82 N.J.L. 686, 689 (E. & A. 1912); Ringwood Co. v. North Jersey, etc., Comm., supra. A trial ruling in respect to such a question is largely committed to the discretion of the trial court (Ibid., 105 N.J.L., at page 172). While the rulings of the trial judge in the instant matter may be debatable, we cannot say they were unjustified to such an extent as to be accounted beyond a due exercise of discretion. New Jersey Highway Authority v. Rudd, 36 N.J. Super. 1, 5 (App. Div. 1955). There was no specific proof that the owners were planning a development of this tract in the near future.
Defendants contend that the attorney for the plaintiff, in opening to the jury, made the statement that in the event of an explosion, causing damage, the defendants would have a cause of action against the plaintiff, and they argue that it was prejudicial error for the court not to admonish the jury against giving consideration to the remark. *506 The transcript does not set forth the disputed remark. We cannot consider the point upon the mere characterization of the comment by defendants. Nor was objection made at the time of the opening but only after the jury had left to view the property. In any event we do not consider the incident to have been materially prejudicial.
Lastly, defendants urge error in the failure of the trial court to charge the jury some 57 requests to charge. Counsel's exception to this refusal at the trial was as follows: "I am taking an exception to the judge's refusal to charge all of the charges as requested on the ground that even though the charge did cover some of the requests, there were some matters that were not covered." We do not consider this blanket objection to a refusal of so multifarious a group of requests to charge to come within the spirit of R.R. 4:47 and R.R. 4:52, requiring specification at the trial of the action sought of the trial judge and the grounds therefor. The court was entitled to have counsel specify just which of the requests counsel contended were omitted, in substance, in the charge as given. Even on the present appeal defendants fail to discuss the merits of their requests and they concede that the first 19 requests were met by the charge as given. The appellate presentation is inadequate. Casual inspection of the requests reveals that most of them are fine-spun particularizations of principles broadly and sufficiently stated in the charge. The charge as a whole was adequate. We perceive no error.
Affirmed.