118 N.J. Super. 587 (1972)
289 A.2d 539
STATE OF NEW JERSEY BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
ABRAHAM MEHLMAN, ET AL., DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1972.
Decided April 4, 1972.
*588 Before Judges GOLDMANN, HALPERN and LORA.
Messrs. Richard L. Rudin and Bertram P. Goltz, Jr., Deputy Attorneys General, argued the cause for appellant and cross-respondent (Mr. George F. Kugler, Jr., Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
Mr. Richard D. McOmber argued the cause for respondents and cross-appellants (Messrs. Giordano, Giordano & Halleran, attorneys).
*589 PER CURIAM.
This is a highway condemnation case wherein the State condemned a triangular-shaped piece of vacant land containing .161 of an acre belonging to defendants. Defendants' entire property consists of .994 of an acre. It has a frontage on State Highway 70 of 299 feet, a frontage on Forge Pond Road to the east of 150 feet, it is about 262 feet on the rear, and about 185 feet on the west side. Located on the property is a one-story commercial building having 12,000 square feet of space, and operated by defendants as a furniture store.
The triangular parcel condemned commences at the southwest corner of the tract and runs (1) along the westerly boundary line for about 185 feet, (2) along the rear about 80 feet, and (3) about 185 feet to the beginning. The distance between the northwest corner of the existing building and the nearest point of the parcel being condemned is about 50 feet, and the distance between the southwest corner of the building and the nearest point of the parcel being condemned is about 110 feet. The vacant lands in front of the building facing State Highway 70 and Forge Pond Road are unaffected by the taking. Of the original .994 of an acre there remanded to defendants after the taking .833 of an acre.
A brief history of what transpired is necessary for a better understanding of the issues. During 1967 defendants decided to put an attached addition onto their existing building. By November 1967 defendants had hired an engineer to prepare plans for the proposed addition, obtained a building permit and commenced excavation. A portion of the ground excavated is included in the parcel taken by the State. On December 20, 1967 defendants were notified by the State of its contemplated condemnation. As a result defendants discontinued any further building operations, having spent to that point $750 for a building permit, $2,150 for engineering expenses and $625 for the excavation. The condemnation complaint was filed on May 27, 1970. The condemnation commissioners were appointed by *590 the court on October 1, 1970 and after a hearing awarded defendants $16,000. Defendants appealed and the State cross-appealed from the judgment. After a jury trial a judgment was entered awarding defendants $25,659 plus interest thereon from the date of taking, May 27, 1970. The State appeals from the judgment, and defendants cross-appeal from so much of the judgment as allowed interest from May 27, 1970, contending interest should have been allowed from December 20, 1967, the date they were notified by the State of the contemplated taking.
The principal issue on appeal is whether the trial court erred in permitting defendants' real estate expert, Byron Kotzas, to express an opinion as to the market value of the taking based upon his hypothetical projections.
We start with the premise that defendants are entitled to just compensation. N.J. Constitution, Art. I, § 20, and N.J.S.A. 20:1-1 et seq. The measure of compensation is the fair market value as of the date of taking. State by State Highway Com'r v. Gorga, 26 N.J. 113, 115 (1958). Such value is defined as being a fairly negotiated price agreed upon voluntarily between an owner willing to sell and a buyer willing to purchase, neither being under compulsion. Trenton v. Lenzner, 16 N.J. 465, 476 (1954), cert. den. 348 U.S. 972, 75 S.Ct. 534, 99 L.Ed. 757 (1955). Since this is a partial taking of vacant land, the price for such taking is the difference between the market value of defendants' entire parcel as a whole, immediately before and unaffected by the taking, and the market value of the remainder not taken, immediately after and as affected by the taking. Putting it another way, it is the value of the parcel taken based upon its best and highest use, plus compensation for any diminution in value resulting to the remainder from the taking. Sterner v. Nixon, 116 N.J.L. 418, 420 (E. & A. 1936). See also State By State Highway Com'r v. Speare, 86 N.J. Super. 565, 572-573 (App. Div. 1965), certif. den. 45 N.J. 589 (1965).
*591 The difficulty arises in determining the appraisal approach to be used in arriving at fair market value. We are satisfied that each partial taking case must be decided on its own merits. We recognize that most often real estate experts use the comparable sales approach. State, by Commissioner of Conservation v. Vacation Land, Inc., 92 N.J. Super. 471, 478-479 (App. Div. 1966). So, too, where the facts warrant it, other approaches are utilized by real estate experts. State By Com'r of Transp. v. Probasco, 114 N.J. Super. 546, 551-552 (App. Div. 1970), aff'd 58 N.J. 372 (1971); State By State Highway Com'r v. Burnett, 24 N.J. 280, 289 (1957). The State has asked us to decide what appraisal method should be used in this case. It is not our function to designate what method of appraisal should be used  our function is limited to decide in each case whether the method used is reasonable under the existing circumstances. As the court stated in Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374 (1971)
There is no precise and inflexible rule for the assessment of just compensation. The Constitution does not contain any fixed standard of fairness by which it must be measured. Courts have been careful not to reduce the concept to a formula. The effort has been to find working rules and practical standards that will accomplish substantial justice such as, but not limited to, market value. [at 384-385].
In the instant case comparable sales and other approaches were admittedly available but were not used by Kotzas in arriving at fair market value. Instead, he used an income approach by projecting a hypothetical building part of which was to be on the parcel being condemned, which (including the area of the existing building) would contain 31,000 square feet. He estimated the annual rental for the combined structures to be $3.75 a square foot, or a gross annual income of $116,625. He estimated the expenses on such hypothetical building to be $2.23 a square foot, which would leave a net annual profit of $46,650. He attributed one-third of such profit to the land, without indicating *592 how or why he arrived at that figure, thus producing a net profit for the land of $15,548 which he capitalized at the rate of 9 1/2%. Based on these calculations he arrived at a value of the property, in its hypothetical form prior to the taking, of $163,663. Following through with his hypothesis and formula he estimated the value of the land after the taking to be $109,105, and the value of the taking to be $54,558. He was unable to say how much of the $54,558 represented the value of the land taken and how much represented damage to the remainder.
The state appraiser, Charles L. Bramhall, used the traditional approach of comparable sales, which he viewed as the fairest method under the circumstances, and arrived at a value for the taking of $12,800. He discarded the income approach as being unfair to defendants.
The effect of Kotzas' approach in arriving at fair market value was to permit the jury to utilize his opinion, based on pure speculation, in reaching its verdict. To permit the jury to do so, would be placing our stamp of approval upon Kotzas' projection of a hypothetical building on vacant land, and capitalizing hypothetical income anticipated to be derived therefrom, without considering the multitude of unknown variables in erecting, leasing, operating and financing the project. Such approach is improper. See Port of New York Authority v. Howell, 68 N.J. Super. 559, 566 (App. Div. 1961), cert. den. 36 N.J. 144 (1961). A similar attempt to arrive at fair market value of vacant land by capitalizing income expected to be realized from buildings not yet built or financed was struck down as too speculative, being a serious departure from principle and an unsound approach. Arlen of Nanuet, Inc. v. State of New York, 26 N.Y.2d 346, 310 N.Y.S.2d 465, 258 N.E.2d 890 (Ct. App. 1970).
In charging the jury the trial judge instructed them to consider whether defendants' 1967 expenses for the building permit, engineering fees and the excavation were to be allowed as a separate element of damage even though defendants *593 offered no proofs that such expenses enhanced the fair market value. In so doing he erred. Such out-of-pocket expenses, on the issue of valuation, could only be considered by the jury to the extent, if any, that they enhanced the fair market value of the taking. Ringwood v. North Jersey District Water Supply Comm'n, 105 N.J.L. 165, 169 (E. & A. 1928).
Defendants, by their cross-appeal, as previously indicated, contend the trial court erred in allowing interest on the award from May 27, 1970 rather than from December 20, 1967. We disagree. The parties tried the case based on a taking valued as of May 27, 1970, and if any interest is allowable it cannot go back of the May 27, 1970 date. Housing Authority of Long Branch v. Valentino, 47 N.J. 265, 268 (1966). Whether interest should be allowed on the award from May 27, 1970 will be determined at the retrial predicated upon the principles enunciated in State v. Nordstrom, 54 N.J. 50, 54-57 (1969), and State By State Highway Com'r v. Seaway, Inc., 46 N.J. 376, 382-387 (1966).
Reversed and remanded for a new trial, on all issues, in accordance with the views expressed herein.