22 A.3d 1012

STATE OF NEW JERSEY BY THE COMMISSIONER OF TRANS-PORTATION, PLAINTIFF–APPELLANT/CROSS–RESPON-DENT, v. 200 ROUTE 17, L.L.C., A LIMITED LIABILITY COMPANY OF NEW JERSEY, DEFENDANT–RESPON-DENT/CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 19, 2011—Decided July 19, 2011.

Before Judges CARCHMAN, GRAVES and MESSANO.

*David R. Patterson,* Deputy Attorney General, argued the cause for appellant/cross-respondent (*Paula T. Dow,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Mr. Patterson,* on the brief).

*Joseph B. Fiorenzo* argued the cause for respondent/cross-appellant (*Sokol, Behot & Fiorenzo,* attorneys; *Mr. Fiorenzo,* of counsel and on the brief; *Steven Siegel,* on the brief).

The opinion of the court was delivered by

CARCHMAN, P.J.A.D.

This appeal by the State from a condemnation award, requires us to consider whether an appraiser, in opining as to the highest and best use of condemned property, may consider hypothetical costs of improvements and renovations to the property in determining its fair market value. We hold that the State is required to compensate a property owner for the land and improvements in their present condition, and the trier of fact may consider the reasonable probability of future renovations and approvals required to improve the property to its highest and best use, discounted by the value of the risks and costs of making such improvements. We reverse and remand for a new trial.

Defendant 200 Route 17, L.L.C. cross-appeals from the use of the "court-rule" rate for fixing prejudgment interest. Because we reverse and remand, we deem this issue as premature and dismiss the cross-appeal without prejudice.

These are the relevant facts. On May 23, 2005, the State filed a verified complaint and declaration of taking seeking to acquire

approximately 1.65 acres of defendant's 2.86 acre property. The property is located on Route 17 southbound in Maywood and Rochelle Park and is improved by a one-story 31,775–square–foot building, which was directly accessible from Route 17 southbound. The building was rented by Sears and contained a merchandise and service center, parts counter, warehouse and offices. The site is also improved with a blacktop parking lot, which provided parking for 112 cars. The building and improvements were included in the taking. The property remaining in defendant's possession after the taking was reduced to 1.21 acres of vacant land without direct access to Route 17.

At the time of the State's acquisition, the land use ordinance in Maywood permitted industrial uses only; the existing mixed use was a grandfathered, non-conforming use.

After the exchange of expert reports, but prior to trial, the State filed a motion in limine, *N.J.R.E.* 104, to exclude the testimony of defendant's experts because they valued the property as a renovated retail property, and such a valuation was speculative. The trial court denied the State's motion, explaining, "it's not speculative to undertake that analysis, that it's reasonably probable that those improvements and changes would be made, and that there is at least a basis to submit it to the jury as to whether or not those [expenses] . . . are reasonable."

At trial, the jury was charged with deciding the amount of just compensation defendant was owed for the property interests acquired by the State and damages to the remainder. Both parties presented experts to assist in valuation. The State presented Norman Goldberg as a valuation expert. Defendant presented Mark Sussman as a rebuttal witness, and Jon Brody as a valuation expert.

Goldberg valued the property in its actual physical condition as of May 23, 2005. He employed the cost approach [1] because he

---

[1] There are three commonly used approaches to determine the value of real property. They include the cost or replacement cost approach, the market or comparable sales approach and the income capitalization approach.

could not find any comparable sales or rentals to support the market sales or income capitalization approaches. In forming his opinion as to value, he recognized the reasonable probability that the owner could obtain land use approvals to renovate the building for its highest and best use as a commercial property. Ultimately, Goldberg appraised the property at $5,637,000.

Defendant's expert, Brody, used all three approaches in valuing the property. Employing the cost approach, Brody valued the property at $9,133,000. Using the comparable sale approach, Brody valued the property at $8,897,000, while using the income approach, Brody valued the property at $8,821,000.

Brody concluded that the "highest and best use" of the property would be as a commercial or retail building. Brody testified that to achieve that use, the property would require $1,589,000 in renovations to create an appropriate interior for the property. That cost included removing some of the interior and installing partitions and tiling. After considering all three of the above approaches, and deducting the $1,589,000 of improvement costs, Brody concluded that the fair market value of the property and damage to the remainder was $8,727,000. The jury returned a verdict of $8,096,140.

On appeal, the State argues that the trial judge erred by permitting Brody to testify as to the value of the property as a commercial retail use based on a speculative renovation, instead of limiting his testimony to the value of the property in its existing physical condition.

■ We first set forth basic principles that inform our analysis. When the State exercises its power to take private property under the Eminent Domain Act, *N.J.S.A.* 20:3-1 to -50, the State must pay to the property owner an amount representing just compensation for the property taken. *N.J. Const.* art. I, ¶ 20; *State, by Comm'r of Transp. v. Caoili*, 135 *N.J.* 252, 260, 639 *A.*2d 275 (1994). Just compensation is " 'the fair market value of the property as of the date of the taking, determined by what a willing

buyer and a willing seller would agree to, neither being under any compulsion to act.'" *Ibid.* (quoting *State v. Silver*, 92 *N.J.* 507, 513, 457 *A.*2d 463 (1983)). It is the "'value that would be assigned to the acquired property by knowledgeable parties freely negotiating for its sale under normal market conditions based on all surrounding circumstances at the time of the taking.'" *Ibid.* (quoting *Silver, supra*, 92 *N.J.* at 514, 457 *A.*2d 463).

■ When calculating value in any condemnation case, the "inquiry is not limited to the actual use of the property on the date of taking but is, rather, based on [the property's] highest and best use." *Cnty. of Monmouth v. Hilton*, 334 *N.J.Super.* 582, 587, 760 *A.*2d 786 (2000), *certif. denied*, 167 *N.J.* 633, 772 *A.*2d 935 (2001). Highest and best use has been defined as, "the use that at the time of the appraisal is the most profitable, likely use or alternatively, the available use and program of future utilization that produces the highest present land value provided that use has as a prerequisite a probability of achievement." *Ibid.* (quotations omitted).

Here, the parties do not dispute that the highest and best use of this particular property is as a commercial retail property. As explained above, defendant's expert opined that to achieve this use, the property would require $1,589,000 in renovations to create an appropriate interior for the property. In determining that this testimony was admissible, the trial court explained:

> [The] trial court has to decide whether the landowner produced credible evidence that a potential use and change is . . . reasonably practical and reasonably probable within the near future. If . . . credible evidence exists, then the jury should decide the case.
>
> As part of the test the Court looked at the appraisers for both parties that agreed what the highest and best use was, which was retail commercial space. So, the first part of that is completed.
>
> The issue here is whether or not there's enough credible evidence that the potential change could be reasonably practical and reasonably probable, and is not speculative. In that regard the Court considers . . . the fact that part of the premises are actually being used for retail purposes. The Court also notes that the plaintiff's appraiser confirms the existing structure could be modified, and used for retail purposes.

Examination of defendant's appraisal report indicates that the defendant['|s appraiser took an inventory of the existing structure, and by that I mean he measured all of the structure and what it was being used for, as did the plaintiff['|s. Defendant['|s appraiser then made a determination that the existing structure could be converted for retail use, based upon the examination in which he states that "no doubt that the subject size, design, and condition enable it to be employed for retail use, the site is large enough to provide for adequate parking."

The plaintiff's appraiser appears to be in agreement. In the appraisal report for the State, the plaintiff's appraiser ... states "based upon observations of the existing improvements along Route 17 in the area, the subject use of the property for either an office building or a retail highway business is considered a reasonable probability." Although for reasons that he was instructed not to, he didn't do the analysis with regard to the cost.

Now, the issue is regarding whether or not the determination as to the cost to renovate and modify the existing building is speculative. I should note also that the plaintiff's appraiser said later on in the appraisal report that since the existing use is not considered to be the highest and best use, the alternatives are to demolish the existing structure, and construct a new improvement or to fully renovate and refit the existing structure, which was the analysis undertaken by the defendant's appraiser.

And the [d]efendant's appraiser estimated the cost relating to the conversion rehabilitation as he stated, we employ the services of *Marshall Valuation*, a nationally recognized cost manual. The cost addressed demolition and construction costs, the overall average cost relating to the projects were approximately $50 per square foot of building. So, essentially he did the analysis in which he took the existing structure, which was described in his report, and having come to the opinion that that existing structure could be modified for retail use applied ... the Marshall & Swift calculations to determine the cost of those renovations.

So, the Court find[s] that it's not speculative to undertake that analysis, that it's reasonably probable that those improvements and changes would be made, and that there is at least a basis to submit it to the jury as to whether or not ... those costs are reasonable. So ... I'm going to deny the motion based on the substantive issues.

On appeal, the State asserts that the trial court erred in refusing to bar Brody's testimony as to the value of the property as if it had already been renovated. The State argues that it is too speculative to appraise the property using the value as if the property contained a commercial building, when currently, the property contains a service area as well as warehouse, office and retail space. Modifications would be required, and ascribing certain monetary amounts to those modifications is speculative.

The State further contends that the basis of the trial court's decision was the judge's "belief that it was not only reasonably

probable that the necessary legal approvals would be granted to renovate the subject completely as a commercial property, but also that it was reasonably probable that a buyer on May 23, 2005, would in fact renovate the property completely as a commercial retail property at a substantial cost."

The distinction between enhancing market value and constituting the basis of market value is, in our view, critical, and it is this distinction that renders defendant's appraisal methodology legally defective.

We are of the view that the appropriate test was enunciated in *Caoili, supra,* 135 *N.J.* at 264–65, 639 *A.*2d 275, where the Court, adopting the test enumerated in our earlier opinion, said:

The jury, however, need not be required to find that the zoning change is probable. We agree with the Appellate Division that in the jury's consideration of evidence of a zoning change, the critical inquiry is the reasonable belief by a buyer and seller engaged in voluntary negotiations over the fair market value of property that a change may occur and will have an impact on the value of the property regardless of the degree of probability. As stated by the Appellate Division, "even though the parties to a voluntary transaction may not believe that a zoning change is more likely than not, their belief that there may be a change should be taken into account if that belief is reasonable and it affects their assessment of the property's value." [*State, by Comm'r of Transp. v. Caoili,* 262 *N.J.Super.* 591, 596–97, 621 *A.*2d 546 (1993).]

Ultimately, the issue can be restated as follows: What would a willing buyer pay a willing seller, without compulsion, for a substandard building, knowing that the buyer would be obligated to obtain appropriate land use and building approvals, as well as spend 1.5 million dollars for the property to achieve its highest and best use? This is different from defendant's expert's approach, which entailed simply assuming that the building was already improved and then deducting the costs of improvement.

To suggest that the two values are the same fails to account for the issues and costs involved in such a venture. Perhaps a buyer might pay a premium if it knew that such an investment would result in the property's highest and best use, but to suggest that the buyer would pay "full value" is speculative at best. To analogize, this is similar to predicting what a willing buyer would

pay a willing seller for a "fixer-upper" knowing that an additional 1.5 million dollars would be necessary to achieve the highest and best use and increase the value of the property. There are uses and costs involved, beyond improvement costs, that must be considered.

The trial judge relied on the case of *State v. Gorga*, 45 *N.J.Super.* 417, 133 *A.*2d 349 (App.Div.1957) (*Gorga I* ), *aff'd*, 26 *N.J.* 113, 138 *A.*2d 833 (1958) (*Gorga II* ), in permitting the challenged expert testimony, while defendant relied on *Hilton*, asserting that there was no error in permitting defendant's experts to testify regarding the value of the subject property based on hypothetical improvements to the property on the date of the taking.

In *Gorga II*, affirming *Gorga I*, the Supreme Court addressed the standard for judging the sufficiency of evidence of potential zoning changes affecting the future use of condemned property in considering its highest and best use as a basis for determining its fair market value. In *Gorga I*, we explained that the condemned property was zoned for residential use, but a real estate expert testified that a "reasonable chance" existed that the property owner would secure the necessary zoning to allow the property to be used for business use. *Gorga I, supra*, 45 *N.J.Super.* at 420, 133 *A.*2d 349. The Court in *Gorga II* imposed, in effect, a two-step test addressing the consideration of zoning changes affecting the future use of property. It established one test for the admissibility and another for the substantive consideration of such evidence. It stated: "if as of the date of taking there is a reasonable probability of a change in the zoning ordinance in the near future, the influence of that circumstance upon the market value as of that date may be shown," but before allowing a jury to consider the issue, the trial court should first decide whether the record contains sufficient evidence of a probability of a zoning change to warrant consideration by the jury. *Gorga II, supra*, 26 *N.J.* at 116–17, 138 *A.*2d 833.

Defendant primarily relied on *Hilton*. In *Hilton*, the property contained a large Victorian house, which housed five families.

Defendant's expert testified that the highest and best use would be as a mid-rise building with ninety-two units on a hypothetical four-lot assemblage. No permit had been applied for and no site-plan approval sought.

We explained, "[i]n sum, we are persuaded that appraising the value of defendant's property as if a four-lot assemblage had already taken place as of the date of taking and then basing highest and best use on such an assemblage constituted a fundamentally untenable and legally unsupportable approach." *Hilton, supra,* 334 *N.J.Super.* at 590, 760 *A.*2d 786. However, we also observed that these potential changes are relevant factors in calculating what a buyer might pay for the property. *Id.* at 590–91, 760 *A.*2d 786. Essentially in *Hilton* we relied on *Gorga* and analogized the situation to zoning cases.

The State cites a number of cases for the proposition that in New Jersey, "appraisals based on speculative improvements that do not exist on the valuation date cannot be considered in valuing a property." Specifically, the State relies on *State v. Mehlman,* 118 *N.J.Super.* 587, 289 *A.*2d 539 (App.Div.1972); *Port Authority of New York v. Howell,* 68 *N.J.Super.* 559, 173 *A.*2d 310 (App. Div.), *certif. denied,* 36 *N.J.* 144, 174 *A.*2d 927 (1961); and *State v. Shein,* 283 *N.J.Super.* 588, 662 *A.*2d 1020 (App.Div.1995), *certif. denied,* 143 *N.J.* 325, 670 *A.*2d 1066 (1996).

*Howell* involved the taking of two properties. One included a two-and-a-half story house and garage on the lot. The other property contained a "shanty" and was operated as a used car lot. Defendant argued that the trial court should have admitted evidence of a hypothetical office building which conceivably could be erected on one of the lots. The trial court characterized this suggested testimony as "pure conjecture." *Howell, supra,* 68 *N.J.Super.* at 566, 173 *A.*2d 310. On appeal and relying on *In re Morris & Cummings Dredging Co.,* 96 *N.J.L.* 248, 251–52, 119 *A.* 308 (E. & A.1921); *In re Housing Authority of City of Newark,* 126 *N.J.L.* 60, 65, 17 *A.*2d 812 (E. & A.1941); *Ringwood Co. v. North Jersey District Water Supply Commission,* 105 *N.J.L.* 165,

169, 143 *A.* 369 (E. & A.1928); and *Manda v. City of Orange,* 82 *N.J.L.* 686, 689, 82 *A.* 869 (E. & A.1911), we affirmed, holding that "[t]he trial court's rejection of appellants' proposed proofs based on a calculation of profits and costs arising from such a theoretical undertaking was fully justified." *Howell, supra,* 68 *N.J.Super.* at 569, 173 *A.*2d 310.

In *Mehlman,* the property was improved with a building and the owner had started constructing an addition, but then stopped when he learned the property was being condemned. Defendant valued the building as if the addition had been built. We determined that to allow such a valuation "would be placing [our] stamp of approval upon [a] projection of a hypothetical building on vacant land, and capitalizing hypothetical income anticipated to be derived therefrom, without considering the multitude of unknown variables in erecting, leasing, operating and financing the project." *Mehlman, supra,* 118 *N.J.Super.* at 592, 289 *A.*2d 539.

In *Shein,* the issue was the fair market value of the property when the actual condition of the property and its status as freshwater wetlands, was unknown to both parties. We concluded that the fair market value of the property depended on its actual condition, not what a reasonable person was "expected" to know about the property. *Shein, supra,* 283 *N.J.Super.* at 599–600, 662 *A.*2d 1020.

Here, defendant argues that the building should be valued as a renovated commercial structure, even though it is not renovated. This approach is too simplistic. Defendant extrapolates language from the cited cases to argue that the value of the property on the date of the taking is not determinative, and that "highest and best use" is a hypothetical concept which requires an assumption that all of the improvements and renovations an owner may have made to a property are in place. This is not the case here.

This property has a structure on it. Speculative improvements to the property, that do not exist on the valuation date, cannot be considered in valuing this property. Prior to this

taking, there is no indication that defendant planned to make any of these improvements. It is illogical to suggest that the State is responsible for hypothetical improvements defendant could have made to its property, and then required to pay for the property, as if defendant had made them. This provides a windfall to the owner, who has not improved the property, but would be paid as if he had. Rather, the State is required to pay for the building "as is," considering the reasonable probability of future renovations and approvals required to improve the property to its highest and best use, discounted by the risks and costs of such venture, just as a buyer would pay for the building in its current condition, then make any improvements necessary to bring the building to the buyer's desired use.

We conclude that the State is entitled to a new trial on the issue of the fair market value of this property. Accordingly, we vacate the jury award and remand for a new trial as to just compensation for the taking of defendant's property.

We note that the State objected to certain comments made by defendant's counsel during the trial and especially during summation. The judge sustained the objections raised and gave curative instructions. We agree that the judge properly ruled on the objections, and at the retrial, counsel should refrain from repeating such comments. The narrow issue is value. The State neither suppressed the value of the property, nor was it unfair or unjust in its appraisal. While argument as to the value determined by the State's appraisal and the value placed on the property by the State may be the subject of fair comment and argument, it is inappropriate to suggest that the State's action was either "egregious or inappropriate."

Finally, as to the cross-appeal, because we have vacated the jury award, the determination as to interest is now premature and may be reconsidered if there is further review of any new jury award and award of interest.

We reverse and remand for a new trial consistent with this opinion. We do not retain jurisdiction.