621 A.2d 546

STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF–APPELLANT, v. FREDERICO R. CAOILI, AND ESTRELLA L. CAOILI, DEFENDANTS–RESPONDENTS, AND HUDSON CITY SAVINGS BANK, A BANKING INSTITUTION OF NEW JERSEY; NEW JERSEY NATIONAL BANK, A BANKING INSTITUTION OF THE UNITED STATES OF AMERICA; JAMES SAVIDGE; TOWNSHIP OF DOVER, IN THE COUNTY OF OCEAN, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued January 6, 1993—Decided March 16, 1993.

592

Before KING, BRODY and LANDAU, JJ.

*Lorinda Lasus*, Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo*, Attorney General, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Lorinda Lasus*, on the brief).

*Peter H. Wegener* argued the cause for respondents (*Bathgate, Wegener, Dugan, Neumann & Wolf*, attorneys; *Peter H. Wegener*, on the brief).

The opinion of the court was delivered by

BRODY, J.A.D.

■ Appealing from a judgment based on a jury's condemnation award, the State raises essentially a single argument—albeit in several contexts. It contends that a trier of fact in a condemnation case may not consider that the property's value is enhanced by the prospect of a zoning change, through ordinance amendment or variance, that would permit a more profitable use, unless the evidence demonstrates that on the date of taking it was more likely than not that such a change would occur. We hold that a property owner's threshold showing is not so high. A jury may consider the prospect of a change in the permitted use if on the date of taking a willing seller and a willing buyer reasonably would have considered the change sufficiently likely that it would affect the selling price.

The State took the property, approximately one acre located in Dover Township, from defendants Frederico and Estrella Caoili (defendants) to improve a major highway with a jughandle turn. The underlying dispute at trial was over the extent, if any, to which the property should be valued for its potential commercial use even though on the taking date it was zoned for only residential use. The State's expert valued the

property at $232,500 for residential use. Defendants' expert valued the property at $445,000 for commercial use. The jury valued the property at $351,000, disclosing by its special verdict that it valued a portion of the property for residential use and valued the rest, which fronts on the highway, to reflect "a potential subdivision of the property to utilize part thereof for a commercial use."

The property is in the shape of an irregular pentagon. The longest side, its 262–foot southerly border, runs along Route 37. Nearby commercial uses along the highway include a gas station and a bank directly across from the property. A large bus garage lies immediately east of the property. The property's westerly and northwesterly borders run along Ramona Lane, a winding street that leads from the highway into a development of 160 single-family homes. Defendants own two of those homes on Ramona Lane, which are located in the northwesterly and northerly portions of their property. The southerly portion of defendants' property serves as the back yards of these two homes. The back yards of several other homes in the development run along the highway west of Ramona Lane. The jury decided that the fair market value of the property would take into account a reasonable probability that despite its placement in a residential zone the undeveloped southerly portion along the highway may be subdivided for commercial use in the near future.

■ The evidence supports the verdict. It includes the opinion of defendants' expert, the presence of nearby commercial uses along the highway, variances that had been given others along the highway, and the opinion of James Henbest, the Township Deputy Zoning Officer and Assistant Planner. A State's witness, Henbest testified on cross-examination that "the chances are better than 50/50" that a subdivision and a use variance would be granted to permit the highway portion of

the property to be subdivided and used for a "[s]ingle office, small retail outlet."

 The State vigorously attacked the relevance and reliability of defendants' evidence. However, whether to admit evidence of value in a condemnation case is "liberally entrusted to the sound discretion of the trial judge." *New Jersey Hwy. Authority v. Rudd,* 36 *N.J.Super.* 1, 3, 114 *A.*2d 721 (App.Div. 1955). The judge did not abuse that discretion here. Also, although neither party's experts divided the projected uses between residential and commercial, the jury reasonably could have done so by its own appraisal of the evidence aided by its view of the property. It had the authority to "adopt so much of the [expert] testimony as appears sound, reject all of it, or adopt all of it." *State v. Vacation Land, Inc.,* 92 *N.J.Super.* 471, 478, 224 *A.*2d 31 (App.Div.1966).

As to the main issue, the State argues that the evidence that Dover would have permitted defendants to use the property for commercial uses was too speculative. It contends that the trial judge should not have admitted such evidence; if admitted, he should have ruled that it was inadequate to be considered by the jury; and if considered by the jury, he should have instructed the jury that such evidence may not be used to enhance the value of the property unless it is more likely than not that defendants would have received permission to use the property for commercial use.

The State relies on *State v. Gorga,* 26 *N.J.* 113, 138 *A.*2d 833 (1958). The issue there was whether market value as of the date of taking may be affected by the prospect of an amendment to a zoning ordinance. The Court recognized that the probability of a zoning change may or may not be a factor in arriving at market value. On the one hand, the probability could be so strong that a willing buyer and seller would take it into account when arriving at a price. On the other, it could be so slight that a judge must decide as a matter of law that its effect on value would be too speculative and therefore may not

be considered by the jury.[1] The question is where to draw the line between mere speculation and a reasonable probability that a more profitable use of the property will become lawful.

The Court stated the rule at 116:

> It is generally agreed that if as of the date of taking there is a reasonable probability of a change in the zoning ordinance in the near future, the influence of that circumstance upon the market value as of that date may be shown. [Citations omitted.]
>
> Whether there is evidence of such probability to warrant submitting the issue to the jury, is in the first instance a question for the court as in the case of any other issue of fact. [Citations omitted.]

"[A] reasonable probability of a change" could mean that a reasonable buyer and seller would consider the change to be more likely than not. It could also mean that a reasonable buyer and seller would consider the likelihood of a change to be a factor affecting the price, though the change is not more likely than not.

The State urges that we adopt the former meaning. It argues in its brief that "the threshold of reasonable probability, and not just likelihood, must be met." We understand *Gorga* to have adopted the latter meaning. Summing up its holding, the Court said, "In short if the parties to a voluntary transaction would as of the date of taking give recognition to the probability of a zoning amendment in agreeing upon the value, the law will recognize the truth." *Gorga, supra,* at 117, 138 A.2d 833. That means to us that even though the parties to a voluntary transaction may not believe that a zoning change is

---

[1] *State v. Inhabitants of Phillipsburg,* 240 *N.J.Super.* 529, 573 A.2d 953 (App. Div.1990), relied upon by the State, was a condemnation case where we held that the trial judge should not have allowed the jury to consider the value of land as though the speculative prospects for its use had been realized. The property was 1.957 acres of unsubdivided vacant land in a residential zone with no water, sewer, electric or other improvements. We held that the land should have been evaluated as unsubdivided vacant land and that it was error to permit the jury to value the land "as if it were divided into building lots at the time of the taking...." *Id.* at 542, 573 A.2d 953. "Obviously, no one would buy ... lot[s] with paper streets, no water, sewer, electric or other improvements as improved lots." *Id.* at 541, 573 A.2d 953.

more likely than not, their belief that there may be a change should be taken into account if that belief is reasonable and it affects their assessment of the property's value. That was the standard the trial judge used in receiving the evidence and instructing the jury.

Our view of the Supreme Court's meaning is fortified by the authority it cites, particularly *City of Austin v. Cannizzo*, 153 *Tex.* 324, 267 *S.W.*2d 808, 815 (1954). There the Texas Supreme Court held that "if it appears reasonably probable to the trial judge that the wants and needs of the particular community *may* result, within a reasonable time, in the lifting of restrictions, he should admit testimony of present value based on prospective use of the property for purposes not then available." (Emphasis added.) Use of the word "may" rather than "will" to describe what is probable means that the probability of change need not be more likely than not. *See* 4 Nichols, *Eminent Domain* § 12.322, at 12–637 to 12–650 (3rd Ed.1985), where the author states that the prospect of a zoning change may be considered if it is "sufficiently likely ... to have an appreciable influence upon present market value."

■■ On another point, the trial judge should have admitted into evidence a portion of the 1988 Master Plan even though Dover adopted it several months after the taking date. *Gorga, supra,* 26 *N.J.* at 118, 138 *A.*2d 833. We conclude, however, that the error was harmless. *R.* 2:10–2. The excluded portion provides:

> Non-residential use encroachment into viable residential neighborhoods should be discouraged and constrained and special planning controls should be established to assure residential neighborhoods are protected.

The provision is a general statement of policy, not related to the special circumstances of the property, and leaves open whether in a particular case the residential zoning is "viable." Moreover, the trial judge had admitted into evidence a corresponding portion of the 1982 Master Plan that was in effect on the valuation date. It provided that a planning goal is "to encour-

age the retention of existing medium density residential development."

We are satisfied from a careful review of this record that the State's remaining arguments are clearly without merit and warrant no further discussion. *R.* 2:11–3(e)(1)(E).

Affirmed.