639 A.2d 275

STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANS-
PORTATION, PLAINTIFF–APPELLANT, v. FREDERICO R.
CAOILI AND ESTRELLA L. CAOILI, DEFENDANTS–RESPON-
DENTS, AND HUDSON CITY SAVINGS BANK, A BANKING
INSTITUTION OF NEW JERSEY; NEW JERSEY NATIONAL
BANK, A BANKING INSTITUTION OF THE UNITED STATES
OF AMERICA; JAMES SAVIDGE AND TOWNSHIP OF DOVER,
IN THE COUNTY OF OCEAN, A MUNICIPAL CORPORATION
OF NEW JERSEY, DEFENDANTS.

Argued November 30, 1993—Decided March 22, 1994.

*Lorinda Lasus,* Deputy Attorney General, argued the cause for appellant (*Fred DeVesa,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel).

*Peter H. Wegener* argued the cause for respondents (*Bathgate, Wegener, Dugan & Wolf,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

This is a condemnation case in which the dispute centers on the fair market value of property taken by the State of New Jersey under its eminent domain powers. The main issue posed by the case relates to the standard of proof applicable to evidence of a potential zoning change affecting the use of the condemned property. Also at issue is the type of valuation methodology that may be followed in determining the fair market value of condemned

property when the record contains sufficient evidence of a prospective zoning change affecting the use of the property.

At trial, the property owners introduced evidence of potential zoning and subdivision changes affecting the land's future use. Based on that evidence, the jury returned a verdict awarding compensation to the owners. The State appealed and the Appellate Division, in a reported decision, affirmed the judgment, 262 *N.J.Super.* 591, 621 *A*.2d 546 (1993). The State sought certification, which this Court granted, 134 *N.J.* 477, 634 *A*.2d 525 (1993).

I

Estrella and Frederico Caoili owned nearly an acre of land located near a highway in Dover Township. On July 15, 1989, the State of New Jersey, Commissioner of Transportation, filed a complaint to condemn the property for the purpose of constructing a "jug-handle" turn for a nearby highway. At that time the property was zoned for residential use. 262 *N.J.Super.* at 593, 621 *A*.2d 546. Although there was some dispute as to whether the property was subdivided into two lots at the time of taking, two single-family homes were located on the property. *Id.* at 594, 621 *A*.2d 546. A 262–foot border of the property ran along a highway on which were located a number of nearby commercial establishments, including a gas station, bank, and bus garage. *Ibid.* Another portion of the property fronted on a residential street that led into a large residential development. *Ibid.*

The State determined that $232,500 was just compensation for the property and it deposited that amount with the Clerk of the Superior Court. Because the owner disputed the State's determination of just compensation, a panel of commissioners was appointed to appraise the property. The commissioners determined that the "highest and best use" of the property was to subdivide it into three residential lots and they valued the property accordingly, finding a fair market value at the time of the taking of $278,000. 262 *N.J.Super.* at 594, 621 *A*.2d 546. The commissioners specifically declined to take into account the possibility that a

use variance might have been obtained for the property because they found that obtaining such a variance was improbable and "too speculative." *Id.* at 595, 621 *A.*2d 546.

The State appealed from the commissioners' finding, and a jury trial was held to determine the fair market value of the property at the time of the taking.

At trial, the State moved to exclude the appraisal report of the owners' experts, Jon Brody and William Steinhart (the "Brody/Steinhart Report"), on the ground that the evidence was insufficient to support their conclusion that a reasonable probability existed that the property would receive a zoning variance for commercial development. In their report, Brody and Steinhart valued the property at $445,000. *Id.* at 594, 621 *A.*2d 546. They arrived at that figure by comparing the property to allegedly similar properties and estimating the value of the property based on the recent sale prices of those properties. The properties used for comparison in the Brody/Steinhart Report were all zoned for commercial use at the time of their sale. Brody and Steinhart justified the use of commercially-zoned property in their appraisal by claiming that a reasonable probability existed that the property would receive a use variance, which would allow the property to be used for a specific nonresidential purpose. In valuing the property, the experts discounted the sale prices of the comparison properties by ten percent to account for the fact that the property had not yet obtained a zoning variance. The State also objected to the introduction of the appraisal report on the ground that the valuation methodology used by Brody and Steinhart was improper.

In denying the State's motion to exclude the Brody/Steinhart Report, the trial court found that

> there [are] ... sufficient facts and circumstances spread upon the record which would justify the prospective purchaser as of the date of taking in concluding there may be a zoning change, and further that the price ... that prospective purchaser would be willing to pay and the price that that prospective seller would be willing to accept would be reflective of that circumstance.

At trial, Brody testified that "based on analyzing and looking at close to fifteen years worth of variances that had taken place in Dover Township," the property had a "very strong probability of obtaining a variance to utilize that parcel of land for something other than what it's presently zoned for."

One of the State's three witnesses, William Burke, testified that in his opinion the property had a fair market value at the time of the taking of $232,500. Burke arrived at that figure by comparing the property to allegedly similar properties, but the comparison properties used in Burke's appraisal were residential properties because he believed that a reasonable probability existed that the zoning for the property would remain residential.

The State's next witness, Joseph Layton, testified that in his opinion the property could not meet all the requirements that an applicant must satisfy before a variance will be granted and therefore no reasonable probability existed that the property owner could obtain a variance. James Henbest, a Deputy Zoning Officer and Assistant Planner for Dover Township, testified for the State that he had previously told Layton that it was unlikely that the property would receive a variance.

The possible subdivision of the property into three lots was also the subject of testimony. The court decided to admit that testimony so long as the jury found that it was reasonably probable that the property could be subdivided into three lots. It gave the jury a cautionary instruction to that effect.

On cross-examination, Burke, over the State's objection, testified that although he had not considered the possibility of a subdivision when making his appraisal, the property could be subdivided into three lots consistent with the physical requirements of the relevant zoning ordinance. Burke further testified, however, that no reasonable probability existed that an owner of the property could get approval to subdivide because subdividing would harm the residential integrity of the area. Henbest also testified, on cross-examination, that it was possible to subdivide the property into a third lot which bordered the highway. He

stated, however, that if the property were subdivided in that manner a "better than 50/50 chance" existed that a variance would be granted for that third lot.

The court instructed the jury that zoning regulations may restrict the types of uses that may be considered in determining the highest and best use of the property. With respect to the potential variance, the court said:

> But suppose there were signs that the law regulating the property's use might change so as to permit a use in the future which would make the property more valuable or less valuable.
>
> Parties negotiating a price for the sale of the property would not ignore these signs, nor should you.
>
> It is for you to determine what effect, if any, any indications of a zoning change or planning change would have on the market value. You may consider that the change then appeared so speculative that there would have been no effect on the property's value.
>
> You may consider the change so likely that the value of the property would fully reflect the change. You may consider that change would have appeared uncertain but would have some effect on the property.

With respect to the potential subdivision, the trial court, as already mentioned, had provided a cautionary instruction when it admitted testimony, namely, that the jury could consider the potential subdivision only if it found that the subdivision was reasonably probable. In submitting that issue to the jury, the court gave the following instruction:

> Now if you do consider this [potential subdivision], you must find—and in all cases you must use this standard: Is it reasonably probable that the governmental body is going to allow this? And [if] it could be subdivided.
>
> There are certain standards that have to be met, and they were ... gone into detail during the attorneys' summations, but nonetheless, you have to find that it is likely that it would be allowed.

The jury awarded the owners $351,000. The jury responded affirmatively to the following special interrogatory: "In arriving at your decision as to just compensation, did you include in your calculation a potential subdivision of the property to utilize part thereof for commercial use?"

On appeal, the Appellate Division determined that the trial court's disposition of the evidence relating to potential zoning and

subdivision changes and the valuation methodology were correct, and affirmed the judgment. 262 *N.J.Super.* at 594, 621 *A.*2d 546.

## II

When the State exercises its power to take private property under the Eminent Domain Act, *N.J.S.A.* 20:3–1 to –50, the State must pay the property owner just compensation for the property taken. *N.J. Const.* art. I, ¶ 20. Just compensation is "the fair market value of the property as of the date of the taking, determined by what a willing buyer and a willing seller would agree to, neither being under any compulsion to act." *State v. Silver*, 92 *N.J.* 507, 513, 457 *A.*2d 463 (1983). It is the "value that would be assigned to the acquired property by knowledgeable parties freely negotiating for its sale under normal market conditions based on all surrounding circumstances at the time of the taking." *Id.* at 514, 457 *A.*2d 463.

In a condemnation proceeding, all reasonable uses of the property bear on its fair market value. However, most relevant in ascertaining fair market value is the property's highest and best use. *State v. Hope Road Assocs.*, 266 *N.J.Super.* 633, 641, 630 *A.*2d 387 (App.Div.1993), *certif. granted*, 136 *N.J.* 26, 641 *A.*2d 1038 (1994); *State v. Mehlman*, 118 *N.J.Super.* 587, 590, 289 *A.*2d 539 (App.Div.1972); Julius L. Sackman & Patrick J. Rohan, 4 *Nicholas on Eminent Domain* § 12.02[1], at 12–75 (1993) (hereinafter *Eminent Domain* ). The reasonableness of a use of condemned property, including its highest and best use, must be considered in light of any zoning restrictions that apply to the property. Hence, the zoning restrictions that govern the use of the property are material factors in determining its fair market value. *State v. Inhabitants of Phillipsburg*, 240 *N.J.Super.* 529, 541, 573 *A.*2d 953 (App.Div.1990); John C. Schneider, Note, *The Admissibility of Zoning Ordinances as Evidence of Fair Market Value in Eminent Domain Proceedings*, 12 *Syracuse L.Rev.* 352 (1961). Because the inquiry into the uses of property is usually wide-ranging, "courts in this state have shown considerable lib-

erality in admitting evidence of market value, particularly in terms of the highest and best use of the subject property." *Silver, supra,* 92 *N.J.* at 515, 457 *A.*2d 463. That evidence encompasses all "relevant facts at the time of the taking[, which] may include those that have a bearing on an available future use of the property." *Ibid.*

This Court in *State v. Gorga,* 26 *N.J.* 113, 138 *A.*2d 833 (1958), addressed the standard for judging the sufficiency of evidence of potential zoning changes affecting the future use of condemned property in considering its highest and best use as a basis for determining its fair market value. There, as in this case, the condemned residentially-zoned property was located on a highway. *State v. Gorga,* 45 *N.J.Super.* 417, 419, 133 *A.*2d 349 (App.Div. 1957), *aff'd,* 26 *N.J.* 113, 138 *A.*2d 833 (1958). Almost all the other property along the highway was zoned for business use, *ibid.,* and a real estate expert testified that a "reasonable chance" existed that the property owner could get the property rezoned for business use. *Id.* 45 *N.J.Super.* at 420, 133 *A.*2d 349. The defendants sought to admit evidence of a zoning ordinance adopted ten months after the taking of the property that had changed the zoning of the condemned property from residential to commercial use. *Ibid.* The trial court excluded the evidence, and the Appellate Division reversed on the ground that the subsequently enacted ordinance was relevant evidence because it demonstrated that at the time of the taking a zoning amendment was a reasonable probability. *Id.* at 421–22, 133 *A.*2d 349.

The Court acknowledged that both "probable" and "remotely possible" zoning amendments could affect the price agreed on by hypothetical reasonable buyers and sellers. 26 *N.J.* at 116, 138 *A.*2d 833. It reasoned, however, that allowing consideration of all zoning changes that were merely possible could lead to "unbridled speculation" regarding the fair market value of such property. *Ibid.* The Court therefore imposed, in effect, a two-step standard governing the consideration of evidence of zoning changes affecting the future use of property. It established one

standard for the admissibility and another for the substantive consideration of such evidence. It stated: "if as of the date of taking there is a reasonable probability of a change in the zoning ordinance in the near future, the influence of that circumstance upon the market value as of that date may be shown," but that before allowing a jury to consider the issue, the trial court should first decide whether the record contains sufficient evidence of a probability of a zoning change to warrant consideration by the jury. *Id.* at 116–17, 138 *A.*2d 833.

Lower courts interpreting *Gorga* generally have applied a standard of probability at least with respect to the admissibility of evidence of an available future use of condemned property. *E.g., Hope Road Assocs., supra,* 266 *N.J.Super.* at 645–46, 630 *A.*2d 387; *State v. Wildlife Preserves, Inc.,* 134 *N.J.Super.* 287, 289, 340 *A.*2d 665 (App.Div.1975); *State v. Market Assocs.,* 134 *N.J.Super.* 282, 285, 340 *A.*2d 663 (App.Div.1975); *see Hoechst Celanese Corp. v. Bridgewater Township,* 12 *N.J.Tax* 532, 539 (Tax 1992) (indicating that for tax assessment purposes *Gorga* requires that a zoning change or variance must be probable rather than merely possible before such evidence is admissible); *Romulus Dev. Corp. v. Town of West New York,* 7 *N.J.Tax* 305, 318 (Tax 1985) (same), *aff'd sub nom. Romulus Dev. Corp. v. Weehawken Tp.,* 9 *N.J.Tax* 90 (App.Div.1987); *Linwood Properties, Inc. v. Fort Lee,* 7 *N.J.Tax* 320, 335 (Tax 1985) (same).

A number of jurisdictions have also used a standard of probability as a basis for admissibility of evidence of future use of condemned property. *E.g., Flood Control Dist. of Maricopa County v. Hing,* 147 *Ariz.* 292, 709 *P.*2d 1351, 1358 (Ct.App.1985); *Department of Transp. v. Sconyers,* 151 *Ga.App.* 824, 261 *S.E.*2d 728, 730 (1979); *Ada County Highway Dist. v. Magwire,* 104 *Idaho* 656, 662 *P.*2d 237, 239 (1983); *Lombard Park Dist. v. Chicago Title & Trust Co.,* 103 *Ill.App.*2d 1, 242 *N.E.*2d 440, 446 (1968); *Hartland Township v. Kucykowicz,* 189 *Mich.App.* 591, 474 *N.W.*2d 306, 309 (1991), *appeal denied,* 439 *Mich.* 926, 479 *N.W.*2d 666 (1992); *In re Petition of Mackie,* 362 *Mich.* 697, 108

N.W.2d 755, 756 (1961); *Nashville Housing Auth. v. Cohen,* 541 S.W.2d 947, 950–52 (Tenn.1976); *Eminent Domain, supra,* § 12C.02[2], at 12C–74–93; *see also* James D. Eaton, *Real Estate Valuation in Litigation* 92–100 (1982) (approving "reasonable probability" in the sense of "imminent" as the standard regarding admissibility of evidence of rezoning) (citing *Lombard Park Dist., supra* ) (hereinafter Eaton).

Federal courts have likewise followed the approach taken by *Gorga:*

> The federal rule is that in a condemnation case, it is the responsibility of the trial judge to screen proper potential uses and exclude from jury consideration those which have not been demonstrated to be practicable and reasonably probable uses. Thus, the trial judge should first screen evidence concerning potential uses, and then decide whether the landowner has produced credible evidence that a potential use is reasonably practicable and reasonably probable within the near future. If credible evidence of a potential use is produced, the jury is to decide whether the property's suitability for such use enhances its market value and, if so, by how much.
>
> [*Eminent Domain, supra,* § 12B.14[1], at 12B–158 ("Potential Subdivisions").]

That two-step approach was expressed in *United States v. 341.45 Acres of Land,* 633 F.2d 108 (8th Cir.1980), *cert. denied sub nom. Bassett v. United States,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981):

> First, the trial judge should screen the evidence concerning potential uses. Then, the trial judge should decide whether "the landowner has produced credible evidence that a potential use is reasonably practicable and reasonably probable within the near future...." If credible evidence of the potential use is produced, the jury then decides "whether the property's suitability for this use enhances its market value, and if so, by how much."
>
> [633 F.2d at 111 (quoting *United States v. 320.0 Acres of Land,* 605 F.2d 762, 817 (5th Cir.1979)).]

The Appellate Division here did not construe *Gorga* as imposing a threshold requirement for the admissibility of such evidence, namely, that the evidence must demonstrate a reasonable probability that such a zoning change would occur. It interpreted "reasonable probability of a change" as used in *Gorga* to require only "that a reasonable buyer and seller would consider the likelihood of a change to be a factor affecting the price, though the

change is not more likely than not." 262 *N.J.Super.* at 596, 621 *A.*2d 546.

In dispensing with any requirement that there must be a judicial finding of reasonable probability of a zoning change before such evidence may be considered by the jury, the Appellate Division relied to a great extent on the following passage from *Gorga:* "in short if the parties to a voluntary transaction would as of the date of taking give recognition to the probability of a zoning amendment in agreeing upon the value, the law will recognize the truth." 26 *N.J.* at 117, 138 *A.*2d 833. That observation, however, was based on the premise that the trial court would have made an antecedent, threshold determination of a probability of a zoning change.

We remain convinced, as was the *Gorga* Court, that allowing a factfinder to consider evidence of a zoning change that indicates at most that a change was not probable or only possible could lead to "unbridled speculation" regarding the fair market value of such property. *Id.* at 116, 138 *A.*2d 833. The risk of unsound and speculative determinations concerning fair market value is real when that determination is based on evidence of a future change that is inherently vague or tenuous because it suggests no more than the possibility of change. That risk can be reduced substantially if the determination of fair market value is based on more cogent evidence indicating beyond a mere possibility that a change of use is likely and, further, that such a change would be an important factor in the valuation of the property. The court can accomplish that reduction in risk by performing, in effect, a gatekeeping function by screening out potentially unreliable evidence and admitting only evidence that would warrant or support a finding that a zoning change is probable.

The jury, however, need not be required to find that the zoning change is probable. We agree with the Appellate Division that in the jury's consideration of evidence of a zoning change, the critical inquiry is the reasonable belief by a buyer and seller engaged in voluntary negotiations over the fair market value of property that

a change may occur and will have an impact on the value of the property regardless of the degree of probability. As stated by the Appellate Division, "even though the parties to a voluntary transaction may not believe that a zoning change is more likely than not, their belief that there may be a change should be taken into account if that belief is reasonable and it affects their assessment of the property's value." 262 *N.J.Super.* at 596–97, 621 *A.*2d 546.

In conclusion, we now hold, consistent with our decision in *Gorga,* that in determining the fair market value of condemned property as a basis for just compensation, the jury may consider a potential zoning change affecting the use of the property provided the court is satisfied that the evidence is sufficient to warrant a determination that such a change is reasonably probable. If evidence meets that level of proof, it may be considered in fixing just compensation in light of the weight and effect that reasonable buyers and sellers would give to such evidence in their determination of the fair market value of the property.

The further question is whether prejudicial error occurred in this case with respect to the disposition of the evidence relating to the potential zoning changes in light of the applicable standard of proof. We conclude that it did not.

The trial court, in denying the State's motion to exclude the report of the owners' experts, did not make an express determination that the evidence would warrant a determination that the potential zoning variance was reasonably probable. The trial court found that a prospective purchaser would believe that a use variance might be granted and that that possibility would affect the price at which the purchaser would buy the property.

Nevertheless, that the trial court understood that such evidence of probability was present and that it would warrant jury consideration is fairly inferable. The only evidence that formed the basis for the court's finding consisted of the Brody/Steinhart Report, which expressed the experts' opinion that the zoning variance was reasonably probable. Thus, although the jury should

not have been allowed to consider a potential variance without an express antecedent finding that sufficient evidence existed to show that the variance was reasonably probable, such a finding is implicit in the trial court's admissibility ruling when measured against the evidence that was actually presented. We may assume the admissibility ruling would have been the same if the court had consciously attempted to conform and express its finding on admissibility under the correct standard.

The court instructed the jury that it must "determine what effect, if any, any indications of a zoning change or planning change would have on the market value." In so doing, the trial court used language that mirrors that of the model civil jury instructions regarding potential zoning changes. See *Model Civil Jury Instructions Manual* § 10.02(B) (1978). Thus, as long as the evidence actually considered by the jury enabled it to conclude that a zoning change was reasonably probable, the effect of that evidence in light of the weight that a buyer and seller would give that factor in determining the fair market value of the property was for the jury to assess.

Moreover, any possible error with respect to the admissibility of the evidence relating to the potential variance was somewhat mitigated by the disposition of the evidence relating to the potential subdivision. See discussion *infra* at 267–270, 639 *A*.2d at 282–284. The court instructed the jury to consider that evidence so long as the jury found it reasonably probable that the property could be subdivided into three lots. Guided by that instruction, the jury responded affirmatively to the following special interrogatory: "in arriving at your decision as to just compensation, did you include in your calculation a potential subdivision of the property to utilize part thereof for commercial use?" In the context of the evidence, the reference in the special interrogatory to the use of the property for "commercial purposes" could relate only to a change of use by variance from residential to commercial. To answer that question affirmatively, as the jury did, it must have concluded that the variance change for commercial use was rea-

sonably probable. That interpretation of the jury's determination is consistent with and supported by the testimony of the State's expert, Henbest, who testified that if the subdivision were granted, a "better than 50/50 chance [existed] that a variance would also be granted."

The trial court's determination of admissibility and its instruction concerning the evidence of a potential zoning change do not appear to have confused or misled the jury to the prejudice of the State.

## III

The State argues, further, that unlike evidence of a zoning change consisting of a use variance, the threshold for evidence of a subdivision is much greater than even reasonable probability and that the evidence of a subdivision was insufficient to permit the jury to consider its valuation of the property. We disagree.

The admissibility of evidence of a potential subdivision of condemned property is "conceptually no different" from the *Gorga* principles regarding the admissibility of evidence of a potential zoning change. *Hope Road Assocs., supra,* 266 *N.J.Super.* at 643, 630 *A.*2d 387; *see, e.g., 341.45 Acres of Land, supra,* 633 *F.*2d at 108; *United States v. 47.3096 Acres,* 583 *F.*2d 270, 272 (6th Cir.1978); *Inhabitants of Phillipsburg, supra,* 240 *N.J.Super.* at 541–42, 573 *A.*2d 953. Many decisions express the standard of admissibility of evidence of a potential subdivision as evidence that the subdivision is not a remote or speculative event. *See* J.D. Perovich, Annotation, *Admissibility of Evidence of Proposed or Possible Subdivision or Platting of Condemned Land on Issue of Value in Eminent Domain Proceedings,* 26 *A.L.R.*3d 780 (1969 & Supp.1993).

Whether the standard is couched in terms of probability or remoteness, courts usually find relevant under that standard whether the property owner has taken steps to effectuate a subdivision. *Id.* at 786 ("[W]here the condemnee has sought to

enhance the value of the condemned land by introducing evidence that the land was adaptable or suitable for subdivision purposes, and where, from the evidence, it appeared that the landowner had taken no tangible steps toward the development of the land into a subdivision, such ... evidence has been held to be inadmissible."). Some of our own cases reflect that understanding. *E.g.*, *Hope Road Assocs., supra*, 266 *N.J.Super.* at 633, 630 *A.*2d 387 (finding evidence on prospect of subdivision approval of condemned site as "within the discretion of the court, [which] ... ordinarily depends upon the adaptability and availability of the site for the proposed subdivision, and evidence that the developer has taken some steps toward obtaining the subdivision"); *Beech Forest Hills, Inc. v. Morris Plains*, 127 *N.J.Super.* 574, 584, 318 *A.*2d 435 (App.Div. 1974) (allowing valuation of subject property as subdivided lots; however, property owner had already obtained subdivision approval when taking occurred); *see In re Proceedings to Acquire Lands*, 107 *N.J.L.* 110, 150 *A.* 387 (E. & A. 1930) (holding that property owner in condemnation proceeding was precluded from introducing into evidence maps made after taking because they were too speculative). As stated by the Appellate Division in *Inhabitants of Phillipsburg, supra:*

> where the landowner has tendered evidence of a proposed or possible subdivision, attempting to establish the number or value of individual lots and where the evidence indicates that the developer had not made affirmative efforts before the condemnation to effectuate the development of the subdivision, the evidence has been held to be inadmissible in most of the cases.
>
> [240 *N.J.Super.* at 541, 573 *A.*2d 953.]

The State stresses that the owners here had not taken any steps toward obtaining subdivision approval at the time of the taking. The State argues that because the appropriate threshold was not met, the testimony regarding a potential subdivision was inadmissible.

In many cases involving a potential subdivision, the feasibility of the property for the particular subdivision is a highly material factor bearing on the optimum use of the property and its fair market value. The "adaptability and availability" of a proposed

subdivision often presents a complex issue. *See Hope Road Assocs., supra,* 266 *N.J.Super.* at 633, 630 *A.2d* 387. Subdivisions are frequently tied in with numerous other requirements affecting the potential development of the property that implicate not only the division of property but its configuration; the application of bulk requirements affecting the location and placement of proposed structures; necessary on-site improvements involving infrastructure, services, and the like; access to the property; surrounding roads; and needed off-site improvements. Consequently, courts will insist on some evidence relating to the feasibility, suitability, and practicability of a proposed potential subdivision and, especially where such a proposed subdivision is complex, whether the owner has undertaken "affirmative efforts" to obtain approval of such a subdivision.

We do not consider the absence of such evidence in this case to be material or fatal. The property is not a large tract with the potential to be subdivided into numerous lots as a basis for a large-scale or complex development. It is a relatively small parcel and the proposed subdivision would create only one more lot from a tract with two lots. Those lots are already developed with existing improvements and infrastructure. Moreover, the proposed subdivision was fully authorized by current local land-use regulations. Further, the record contains testimony about the subdivision as an aspect of the proposed variance. Thus, in context, the subdivision was considered in conjunction with the variance, and its likelihood appeared even less problematic than that of the variance.

Under those circumstances, the trial court correctly admitted the evidence of the subdivision under the reasonable probability standard as expressed in its cautionary instruction. Given the fact that the subdivision involved only a single lot and was clearly authorized by the current land-use regulations, as well as the evidence demonstrating, as a threshold matter, that a potential variance for the commercial use of that lot was also reasonably

probable, we are satisfied that no error surrounded the introduction of that evidence.

We note that the Appellate Division in *Hope Road Associates, supra,* ruled that jury instructions relating to potential subdivisions must "explain that there must be a reasonable probability, from a willing buyer's and a willing seller's point of view, that defendant would, in the immediate future acquire an interest ... and secure approval from the municipality." 266 *N.J.Super.* at 646–47, 630 *A.*2d 387. The trial court here instructed the jury to consider the evidence of the subdivision so long as the jury found reasonably probable that the property could be subdivided into three lots. That instruction imposes a greater burden of proof with respect to a jury's consideration of evidence of the future subdivision than does the parallel instruction relating to evidence of a future variance. However, we do not address whether that aspect of the jury instruction was correct in light of this record. The owners in this case do not challenge that instruction. Moreover, the State's primary argument relates to the sufficiency of the evidence of the subdivision, not to the standard governing the jury's consideration of that evidence.

## IV

The State also disputes the valuation methodology used by the owners' experts and considered by the jury.

■■■ Three valuation methodologies may be used in appraising condemned property with a reasonable probability of a zoning change: the reproduction cost, the capitalization cost, and the comparable value. American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 51–53 (1983); *see Eminent Domain, supra,* § 12C.01[3][a]–[c], at 12C–24 to –38. Our courts have consistently refrained from mandating that a specific methodology be used in appraising condemned property. For example, in *Mehlman, supra,* 118 *N.J.Super.* at 587, 289 *A.*2d 539, the court declined to designate which method of appraisal should have been used, stating that an appellate court should determine only wheth-

er the method used at trial was reasonable. *Id.* at 591, 289 *A*.2d 539; *see County of Middlesex v. Clearwater Village, Inc.,* 163 *N.J.Super.* 166, 173, 394 *A*.2d 390 (App.Div.1978). "[T]here is no precise and inflexible rule for the assessment of just compensation. The Constitution does not contain any fixed standard of fairness by which it must be measured. Courts have been careful not to reduce the concept to a formula." *Jersey City Redevelopment Agency v. Kugler,* 58 *N.J.* 374, 387–89, 277 *A*.2d 873 (1971).

▇▇▇ Plaintiffs' experts used the comparable sales approach in their appraisal of the owners' property. *State v. Township of S. Hackensack,* 65 *N.J.* 377, 382, 322 *A*.2d 818 (1974) (noting that where appropriate, evidence of comparable sales is "most satisfactory proof" of value). They first valued the property as if it had obtained the variance, and then discounted that amount ten percent to account for the fact that the variance remained a probability.

In *Gorga,* this Court approved the method of valuation urged by the State:

> The important *caveat* is that the true issue is not the value of the property for the use which would be permitted if the amendment were adopted. . . . No matter how probable an amendment may seem, an element of uncertainty remains and has its impact upon the selling price. At most a buyer would pay a premium for that probability in addition to what the property is worth under the restrictions of the existing ordinance.
>
> \* \* \* \* \* \* \* \*
>
> In support of his opinion of the then market value, an expert may advert to the value the property would have if rezoned, but only by way of explaining his opinion of the existing market value.
>
> [26 *N.J.* at 117–18, 138 *A*.2d 833.]

The purpose of any methodology is to arrive at an appraisal that reflects the current value of the property and not the value of the property at a future date. Thus, so long as the method used yields a current value rather than a future value, whether the appraiser starts with the value as currently zoned and adjusts upward, assigning a "premium" to reflect the likelihood of a zoning change, or starts with the value of the property as it is likely to be

zoned in the future, assigning a "discount" of that value to account for the likelihood of such a zoning change, would not appear significant.

Under the comparable-use methodology, the value of the condemned property can be reached either by valuing the land as if the proposed change were in place and then discounting that value to reflect the likelihood of the change, or the value can be ascertained by valuing the land under the existing land-use restrictions and then adding some value to reflect that likelihood. Although "courts appear to favor the practice of using comparable sales with zoning the same as the existing zoning on the property being appraised, rather than using higher-zoned sale properties and discounting them, ... the ultimate decision is generally left to the judgment of the appraiser." Eaton, *supra*, at 95–96 ("If there is little doubt that the property will be rezoned, and the discount applicable to the higher-zoned sales will be comparatively minimal, it may be advisable to use sales of higher zoned property."). Therefore, "it has been held that an award may be made on the basis of an impending rezoning (as an accomplished fact), minus a discount factor to allow for the uncertainty." *Eminent Domain, supra*, § 12C.03[2], at 12C–89; *see also* William B. Knipe, *Valuing the Probability of Rezoning*, 56 *Appraisal J.* 217, 220 (1988) ("[T]he parties can be expected to bargain toward a price that can be viewed as the value of the property with the more valuable zoning classification, discounted by some amount."). *E.g., State ex rel. State Highway Comm'n v. Modern Tractor & Supply Co.*, 839 *S.W.*2d 642, 650–51 (Mo.Ct.App.1992); *State ex rel. State Highway Comm'n v. Carlson*, 463 *S.W.*2d 74, 81–82 (Mo.Ct.App.1970); *City of New York v. Nelkin*, 51 *N.Y.*2d 921, 434 N.Y.S.2d 981, 415 *N.E.*2d 970, 971 (1980); *Speach v. Smith*, 53 *A.D.*2d 1024, 386 *N.Y.S.*2d 149, 150–51 (1976); *Jones v. State*, 45 *A.D.*2d 927, 357 *N.Y.S.*2d 554 (1974).

We view *Gorga* as expressing a preference that condemned property be valued under the existing ordinance and then some value be added to reflect the likelihood of the proposed zoning

change. That approach most clearly identifies the "premium" of the likelihood of a zoning change that should be reflected in the fair market value of the condemned property. Perhaps that "premium" approach more effectively assures that the current fair market value of the condemned property is not the value of the property as though the proposed change were a *fait accompli*. 26 *N.J.* at 117–18, 138 *A*.2d 833. We do not, however, read or apply the observations in *Gorga* to mandate that in the valuation process experts must use addition instead of subtraction. *E.g., State v. Speare*, 86 *N.J.Super.* 565, 575, 207 *A*.2d 552 (App.Div.1965) (involving condemned property zoned residential and fronting on highway, with respect to which both commercially- and residentially-zoned comparison properties were used in valuing residentially-zoned property; ruling that weight to be accorded allegedly comparable sales is for jury to decide, but not mandating only "premium" comparable sales approach).

 We are satisfied that the methodology used by the owners' experts was reasonable. As noted, other courts and commentators have explicitly endorsed that methodology. Accordingly, we reject the State's contention that the owners' evidence should have been excluded because it used commercially-zoned properties as comparable sales in arriving at an initial value of the property and then discounted that valuation in accordance with their estimation of the likelihood of such a variance to arrive at the property's fair market value on the date of taking.

## V

The judgment below is affirmed.

For Affirmance—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

Not Participating—Chief Justice WILENTZ.