Justice ALBIN,
dissenting.
By ignoring the record, the majority overthrows a damages award rendered by a jury in a condemnation case after a ten-day trial. Although the majority and dissent have different opinions about this case, the majority is not entitled to its own facts. The majority’s decision cannot be reconciled with the record. Nor can it be reconciled with the deferential standard of review that cautions this Court against substituting its judgment for evidentiary rulings made by the trial court and factual determinations made by the jury.
The Borough of Saddle River (Borough) took property of 66 East Allendale, LLC (East Allendale) through its power of eminent domain. East Allendale was entitled to just compensation for the taking based on the highest and best use of the property. East Allendale presented expert testimony that the highest and best use of the property was the construction of a 10,000-square- *147 foot bank. Because construction of a bank required a bulk variance, East Allendale also presented expert testimony that it was reasonably probable that the zoning board of adjustment would have granted such a variance. In contrast, the Borough offered expert testimony that a bulk variance would not have been granted.
Based on the record, which included hearing all of the expert testimony, the trial judge performed his gatekeeping role and made thorough and careful evidentiary findings. He concluded that a reasonable probability existed that the zoning board would have granted a bulk variance. It was for the jury to determine whether a bulk variance would have been granted and the fair market value of the property taken by the Borough. After considering the expert testimony of both sides, the jury returned an award in favor of East Allendale in the amount of $5.25 million.
In a thoughtful and well-reasoned opinion by Judge Fasciale, and joined by Judges Rodríguez and Sabatino, the Appellate Division affirmed the trial judge’s rulings and the jury’s award. Borough of Saddle River v. 66 E. Allendale, LLC, 424 N.J.Super. 516, 38 A.3d 686 (App.Div.2012). In reversing the jury, the trial judge, and the Appellate Division, the majority states that there was not a foundational basis for East Allendale’s expert testimony. But to reach that conclusion the majority has to turn a blind eye to the meticulously detailed testimony of East Allendale’s experts. I dissent because the majority has failed to give proper deference to the trial court’s evidentiary rulings and, more importantly, to the factfindings of the jury. This Court should not be the decisive juror.
Because the majority’s errors flow from its failure to give East Allendale the benefit of a fair and faithful reading of the record, it is to the record that I turn.
I.
East Allendale owned a 2.13-acre tract of property in the Borough of Saddle River on which it had been attempting to *148 construct a bank. Saddle River, a community zoned 98% residential, acquired the property through eminent domain for the purpose of developing a park.
East Allendale’s property straddled the Borough’s office and residential zones, with one-third of the lot in the office zone and two-thirds in the residential zone. The Borough’s ordinances contained an improved-lot-coverage maximum, which required buildings and accompanying parking lots constructed in the office zone to occupy no more than 30% of a lot’s total surface area. East Allendale, however, claimed that the highest and best use of the property would be the construction of a 10,000-square-foot bank building that, with the parking lot, would cover 42% of the lot’s surface area.
The parties did not dispute that the construction of a bank would be the highest and best use of the property. Indeed, one of East Allendale’s experts, a retail and bank developer, testified that the property was located in a prime spot for a bank. The Borough also conceded that the zoning board would have granted East Allendale a use variance to allow parking in that portion of the lot zoned residential.
The battle lines between the parties were drawn over whether the zoning board of adjustment would have granted a bulk variance for East Allendale’s proposed construction of a bank. So long as the trial judge was persuaded that the grant of a bulk variance was reasonably probable, then the impact of a potential variance on the fair market value of the property was for the jury’s ultimate determination. See State by Comm’r of Transp. v. Caoili 135 N.J. 252, 265, 639 A.2d 275 (1994) (“[T]he jury may consider a potential zoning change affecting the use of the property provided the court is satisfied that the evidence is sufficient to warrant a determination that such a change is reasonably probable.”). The trial judge determined that East Allendale met its evidentiary burden. That the judge made his ruling after hearing the trial testimony of East Allendale’s experts clearly would not be a reason for throwing out the jury’s verdict. The judge exercised *149 caution in not rendering a decision until after hearing the experts’ testimony.
Boiled down to its essence, the question is whether East Allen-dale’s experts gave a foundation for their conclusions. An expert witness must “give the why and wherefore that supports the opinion,” and not present a mere conclusion. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372, 25 A.3d 221 (2011) (citations omitted). East Allendale’s experts did just that — they did not give “bare opinion[s] that ha[ve] no support in factual evidence or similar data.” See ibid.
East Allendale, through its experts, merely had to establish that there was a reasonable probability that the variance would have been granted. See Caoili, supra, 135 N.J. at 265, 639 A.2d 275; State by Highway Comm’r v. Gorga, 26 N.J. 113, 116, 138 A.2d 833 (1958). For the grant of a bulk variance, as with any variance, an applicant must satisfy “positive” and “negative” criteria under N.J.S.A. 40:55D-70c(2) of the Municipal Land Use Law (MLUL). See Smart SMR, Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 323, 704 A.2d 1271 (1998). In order to establish that it was reasonably probable that the zoning board would grant the bulk variance, East Allendale had to address the positive criteria' — that (1) the MLUL’s purposes “would be advanced by a deviation from the zoning ordinance” and that (2) “the benefits of the deviation would substantially outweigh any detriment,” N.J.S.A. 40:55D-70c(2), and the negative criteria — that a variance (3) could be “granted without substantial detriment to the public good” and (4) “[would] not substantially impair the intent and the purpose of the zone plan and zoning ordinance,” N.J.S.A. 40:55D-70. See Kaufmann v. Planning Bd. for Twp. of Warren, 110 N.J. 551, 553, 542 A.2d 457 (1988).
The experts, through their trial testimony and pretrial reports, presented opinions not only based on an extensive factual record, but also firmly anchored in the law.
*150 A.
East Allendale offered as experts David Hals, a professional engineer and planner with degrees in applied science and civil engineering, and Peter Steck, a professional planning consultant with degrees in civil engineering and city and regional planning. In their reports and testimony, they expressed their expert opinions that there was a reasonable probability that the zoning board of adjustment would have granted a bulk variance for the construction of a bank (comprising 7.11% lot coverage) and a parking lot (comprising 34.89% lot coverage). Jon P. Brody, a certified general appraiser, also testified that, based on Hals’s proposed plan, there was a reasonable probability that a variance would have been granted. Brody concluded that the market value of East Allendale’s property under Hals’s proposed plan was $5,250,000 as of November 8, 2006.
East Allendale’s experts addressed each of the positive and negative criteria in considering whether a bulk variance was reasonably probable.[1]
1.
East Allendale proposed replacing an aging gas station and constructing a modern bank building. Hals explained in detail, in his report and testimony, that the substitution of a bank building for a decrepit gas station was a benefit to the community because a bank was more consistent with the commercial character of the area, and thus a more “appropriate development of the land.” Thus, the bulk variance “would encourage the appropriate use or development of land” and “promote a desirable visual environment through good civic design.” See Kaufmann, supra, 110 N.J. at 562-63, 542 A.2d 457 (noting that c(2) “purpose” requirement may *151 be met by advancing “specific purposes of zoning set forth in the MLUL”). Additionally, according to Hals, the proposed parking area behind the bank would preserve open space and maintain sight lines, while embankments and landscaping would promote a desirable visual environment. Hals emphasized that a bulk variance was necessary because the existing zoning ordinance made development of the land nearly impossible. Hals testified that it was not practicable to construct a 10,000-square-foot building in a zone with a 30% improved-lot-coverage maximum.
Consistent with his expert report, Hals explained that none of the commercial property in Saddle River complied with the 30% improved-lot-coverage maximum. The other properties in the office and business zones had improved-lot coverage of between 65% and 85%. Significantly, the Borough’s present 30% coverage requirement rendered all the properties in the office and business zones non-conforming uses. Thus, without the grant of a bulk variance, only East Allendale’s property would be required to comply with the coverage requirement. Hals’s report also explained that Saddle River’s improved-lot-coverage maximum was one-half of that permitted in the ordinances of nearby municipalities. Therefore, restricting East Allendale to a 30% improved-lot-coverage maximum was atypical not only in Saddle River, but also in surrounding communities.
Steck’s report and testimony supported much of Hals’s presentation. Steck too testified that all the uses in the Borough’s office zone exceeded the 30% lot coverage and that a failure to grant a bulk variance would not have been consistent with the MLUL. From his viewpoint, the strict application of the zoning ordinance would cause an “extreme hardship” because the property otherwise could not be feasibly developed for commercial purposes.
2.
Hals also explained that the benefits of the variance would substantially outweigh any detriment. Hals underscored that the benefits of a variance included development of the space with an adequately sized building and parking area, while nonetheless *152 preserving 58% of the lot for landscaping, greenery, and wooden areas. Hals also stated that East Allendale intended to place the parking lot behind the building, thereby screening the parking lot from view on the street. Meanwhile, any detriments, such as light pollution and water runoff, were minimized by the plan’s design.
Steck also concluded that the proposed bank building conferred significant developmental benefits that outweighed any detriments. In particular, he stated that Hals’s planned landscaping and rainwater detention facilities would “address what would otherwise be looked at as negative aspects.”
3.
Hals testified that the grant of a variance would not have imposed a substantial detriment to the public good. Hals noted that the proposed development, including its lot coverage, would be consistent with the businesses in the Borough’s commercial area. Hals maintained that the proposed improved coverage of 42% was not a “large scale development,” was not “overbuilding the property,” and that any resulting water runoff could be readily managed. Hals added that the plan called for adequate screening between the street and the parking area, and between the bank and residential areas.
Steck pointed out that the other businesses in the Borough’s commercial area had lot coverage of over 60%, and thus the proposed development would be consistent with the office and business zones. He also maintained that the plan’s proposed driveways and parking layout were designed with safety in mind.
4.
In concluding that a variance in this ease would not substantially impair the intent and purpose of the zone plan, Hals considered the existing and past zone plans and that the proposed bank building would be consistent with the other commercial uses in the zone. Hals highlighted that the proposed use was a permitted use in the office zone.
*153 Steck concurred that the proposed bank was consistent with the office zone and “the history of [the Borough’s] master plan documents.” He further noted that the Borough had recognized that, along East Allendale Road, residential use was decreasing and commercial use was increasing and, on that basis, the Borough had recommended a review of the zoning plan in that area. Steck stressed that East Allendale’s plan would enable “reasonable use” of its property given its location in the Borough’s commercial area.
II.
A.
The trial judge denied the Borough’s motion to strike East Allendale’s expert opinions. The judge concluded that the opinions of East Allendale’s experts were grounded in the record. In denying the Borough’s motion for a new trial, the judge cited to the evidentiary support for his conclusion that there was a reasonable probability that a bulk variance would have been granted. The judge pointed out that: (1) the Borough had granted similar variances in the past; (2) no existing properties in the office zone complied with the 30% improved-lot-coverage maximum, and past developments had 65-80% improved-lot coverage; and (3) the proposed plan would conform to the physical characteristics of the surrounding commercial properties and not adversely impact nearby residential properties.
B.
Hundreds of pages of reports, deposition testimony, and trial testimony amply support the trial judge’s determination that both Hals and Steck gave the “why and wherefore” of their opinions. No fair reading of this record suggests that their opinions were lacking in factual and legal support. Moreover, the majority has seemingly raised the bar for obtaining a bulk variance. If this record does not show that there was a reasonable probability that a zoning board would or should have granted a bulk variance, then *154 we are unlikely ever to see such a record. In this regard, the majority’s opinion may have unintended consequences in typical applications for bulk variances.
C.
Today, the majority holds that the determination of whether a zoning variance was reasonably probable should be decided in a pretrial hearing. Neither Gorga nor Caoili instructs trial judges to perform the gatekeeping function before witness testimony is presented to the jury.
Indeed, nothing in N.J.R.E. 104(a) suggests that the trial judge could not have proceeded as he did. The judge did not feel prepared to make the admissibility determination based on the expert reports and deposition testimony — the cold record. Instead, he wanted to hear from the witnesses themselves, and, to conserve judicial resources, he decided not to conduct a multi-day dry run. In accordance with N.J.R.E. 104(a), he permitted the expert witnesses to testify and withheld the admissibility determination until a later time. See N.J.R.E. 104(a) (“When the ... admissibility of evidence ... is subject to a condition, and the fulfillment of the condition is in issue, that issue is to be determined by the judge.”). Although N.J.R.E. 104(a) permits a judge to “hear and determine such matters out of the presence or hearing of the jury,” he is not required to do so. Judges are given broad discretion to manage the presentation of witnesses to “avoid needless consumption of time.” N.J.R.E. 611(a). So long as the trial judge correctly decided the admissibility of the expert testimony and correctly submitted to the jury the zoning variance issue, there is no reason to overturn the jury’s verdict.
D.
To summarize, it is not the function of this Court to substitute its evidentiary decisions for those of the trial court. “[W]e apply ... [a] deferential approach to a trial court’s decision to admit expert testimony, reviewing it against an abuse of discretion *155 standard.” Pomerantz Paper, supra, 207 N.J. at 371-72, 25 A.3d 221 (citing Kuehn v. Pub Zone, 364 N.J.Super. 301, 319-21, 835 A.2d 692 (App.Div.2003), certif. denied, 178 N.J. 454, 841 A.2d 92 (2004)); see also Carey v. Lovett, 132 N.J. 44, 64, 622 A.2d 1279 (1993) (“Ordinarily, the competency of a witness to testify as an expert is remitted to the sound discretion of the trial court. Absent a clear abuse of discretion, an appellate court will not interfere with the exercise of that discretion.”) (citing Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 411, 161 A.2d 69 (1960)).
The majority has merely substituted its judgment for that of the trial judge, who not only had the opportunity to hear the "witnesses’ testimony, but also had the feel of the ease, which can never be conveyed by the cold record. The record clearly supports the trial judge’s decision to admit the expert testimony and to submit the issue concerning the zoning variance to the jury. Even if this case were a close call, which it is not, we would be required to defer. In my view, the majority’s decision to reverse both the trial judge and the Appellate Division is without foundation.
For this reason, I respectfully dissent.
For reversal and remandment — Justices LaVECCHIA, HOENS and PATTERSON — 3.
For affirmance — Chief Justice RABNER and Justice ALBIN— 2.
Not participating — Judges RODRÍGUEZ (temporarily assigned) and CUFF (temporarily assigned).

 Steck also opined that it was reasonably probable that the zoning board would have granted a variance to the parking-space minimums set forth in the Borough’s ordinance. Under Steck's alternative plan, which complied with the 30% improved-lot-coverage maximum, the zoning board would have approved a bank building of the same size but with a smaller parking lot. It does not appear that this alternative theory was pressed by East Allendale.