SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Township of Manalapan v. Anthony Gentile** (A-14-19) (083137)

**Argued February 4, 2020 -- Decided June 2, 2020**

**SOLOMON, J., writing for the Court.**

The Township of Manalapan challenges the condemnation award in favor of defendants entered after a jury trial. The issue is whether it was error to admit testimony that the condemned property's highest and best use would require a variance without first determining whether there is a reasonable probability the variance would be granted.

Defendants' property was in an area zoned as R20 (residential) until 2002, when the Township rezoned it to RE (residential environmental). The R20 zone allows for single family dwellings on half-acre lots, whereas the RE zone provides for single family dwellings on lots of no fewer than three acres. Therefore, undivided land in an R20 zone would have a greater fair market value than the same land in an RE zone.

At trial, the Township's expert explained that, in arriving at his estimate of $2.83 million, he assumed the continued application of RE zoning and evaluated the property by reference to the sale price of similar properties. He acknowledged, however, that unlike the subject property, those he compared did not have sanitary sewer or municipal water systems. By contrast, defendants' expert planner opined, over the Township's objection, that the highest and best use of the subject property would be to divide it into smaller lots, as would be permitted in an R20 zone. He explained that such use of the property would yield "up to six times the density" under the current RE zoning but that "the Township committee would have to agree to change the zone." Importantly, he did not offer any opinion about the value of the property as is or if a variance were granted, or even about the probability that such a variance would be granted. Indeed, in ruling on the Township's objection to his testimony, the court cautioned defendants' expert not to "opin[e] on possibilities or likelihoods or odds or procedures about getting variances."

The Township moved for judgment at the close of evidence. The court granted the motion in part, ordering defense counsel not to argue in closing that, when calculating the property's value, the jury could assume a variance will be granted. But the court allowed the question of fair market value to go to the jury. During closing, defense counsel reminded the jurors that the subject property is surrounded by an R20 zone and repeatedly referenced the possibility of rezoning.

The court instructed the jurors to decide the market value of the property using the expert opinions if they "find those opinions helpful." The judge instructed that if the jurors were to reject all expert testimony, then they could "come up with another figure for the fair market value of the property," so long as that figure is based on the evidence presented. The jury returned a unanimous verdict awarding defendants $4.5 million.

The Township filed post-trial motions claiming that the Court's decision in Borough of Saddle River v. 66 East Allendale, LLC, 216 N.J. 115 (2013), required the trial court to conduct an N.J.R.E. 104 hearing as to the reasonable probability of a variance before admitting any testimony by defendants' expert that the subject property's highest and best use would require R20 zoning. The trial court denied those motions, and the Appellate Division affirmed. The Court granted certification, "limited to the issue of whether the Appellate Division erred in concluding that a plenary hearing regarding the 'reasonable probability' of a zoning change was not required before the commencement of trial." 239 N.J. 495 (2019).

**HELD:** As the Court explained in Borough of Saddle River v. 66 East Allendale, LLC, evidence that risks misleading the jury into assuming a zoning variance for purposes of calculating a property's value must not be admitted absent a judicial finding it is reasonably probable that the variance will be obtained. 216 N.J. 115, 142 (2013). Therefore, the trial court erred by allowing the jury to consider testimony that the highest and best use of the subject property would require a variance without first confirming the probability of securing that variance.

1. A municipality has the authority to take private property for a public use provided that just compensation is paid to the property owner. Just compensation is the fair market value of the property as of the date of taking. The fair market value generally considers "the property's highest and best use." To constitute the 'highest and best use,' a use must be '1) legally permissible, 2) physically possible, 3) financially feasible, and 4) maximally productive. (pp. 10-11)

2. Whether potential zoning changes might be considered in determining a property's best use or whether such consideration would run afoul of the "legally permissible" requirement was addressed in Commissioner of Transportation v. Caoili, where the Court held that "the jury may consider a potential zoning change affecting the use of the property provided the court is satisfied that the evidence is sufficient to warrant a determination that such a change is reasonably probable." 135 N.J. 252, 265 (1994) (emphasis added). (pp. 11-12)

3. In 66 East Allendale, the Court applied those principles in the context of a purported highest and best use that could be achieved only if a variance were granted and held that, "only when the trial court has first determined that the evidence is of a quality to allow the jury to consider the probability of a zoning change should the jury be permitted to

assess a premium based on that zoning change . . . . The gatekeeping function was assigned to the judge specifically to screen the jury from hearing mere speculation." 216 N.J. at 142. From 66 East Allendale derives the following overarching approach to predicating highest and best use analyses on not-yet obtained zoning variances. A use that does not conform to current zoning is not legally permissible and so cannot be a property's highest and best use. See id. at 137. However, while a property's highest and best use "is ordinarily evaluated in accordance with current zoning ordinances[,] [c]ertain circumstances may permit valuation to include an assessment of a change in the permitted use of a property, but only if there is a reasonable probability that a zoning change would be granted." Id. at 119. That substantive determination of probability must account for "the standard that would govern the particular zoning change under consideration." Id. at 143. In making that determination, the trial court must examine the parties' evidence as to the probability of the zoning change to "determine whether [the court] can render its required determination based on the papers." Ibid. If that determination cannot be made on the written submissions alone, the court shall conduct a pretrial Rule 104 hearing to resolve the issue. Id. at 142-43. (pp. 12-16)

4. The question presented in this case was answered in 66 East Allendale. The trial court here neglected its role as gatekeeper by letting the jury consider evidence about a variance without following the procedures and standards laid out in 66 East Allendale. Because there was no finding that a variance from RE to R20 would likely be granted, the jury should not have been permitted to evaluate the property on any basis other than its highest and best use "in accordance with current zoning ordinances." See id. at 119 (emphasis added). Given the state of the evidence in this case, a Rule 104 hearing would have been necessary to make a finding as to the likelihood of obtaining the variance, but the trial court never held that hearing or made that finding. The result was that "the quality of the evidence that the jury was allowed to consider undermined the soundness of the jury's property valuation." Ibid. Given that the only opinion put before the jury as to the value of the property was that of plaintiff's expert appraiser, who valued the property at $2.83 million based upon RE zoning, the jury's $4.5 million verdict was a manifest miscarriage of justice that shocks the conscience and requires a new trial. (pp. 16-18)

5. On remand, if defendants seek once again to admit testimony of a highest and best use that would require a variance, the trial court must conduct a Rule 104 hearing to determine whether there exists a reasonable probability that a variance would be granted. Only if the court makes that finding may the jury consider, for valuation purposes, uses of the subject property that would require a zoning variance. See id. at 142.

**REVERSED and REMANDED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON'S opinion.**

# SUPREME COURT OF NEW JERSEY

## A-14 September Term 2019

### 083137

Township of Manalapan,
a Municipal Corporation of the State
of New Jersey,

Plaintiff-Appellant,

v.

Anthony Gentile, individually and
as Executor of The Estate of Eugene Gentile,
Eugene Gentile, and Frank Gentile,
Administrator of the Estate of Eugene John Gentile,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| February 4, 2020 | June 2, 2020 |

William J. Wolf argued the cause for the appellant
(Bathgate Wegener & Wolf, attorneys; William J. Wolf,
Peter H. Wegener, and Ryan S. Malc, on the briefs).

Lawrence B. Sachs argued the cause for the respondents
(Lawrence B. Sachs, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

1

When a municipality condemns private property for the purpose of taking it, the municipality must compensate the owner based upon the fair market value of the property, which is generally calculated in terms of what the property would be worth if put to its highest and best use. In this case, the Township of Manalapan challenges the condemnation award in favor of defendants Anthony, Eugene, and Frank Gentile entered after a jury trial. The issue is whether it was error to admit testimony that the condemned property's highest and best use would require a variance without first determining whether there is a reasonable probability the variance would be granted.

Briefly stated, the Township presented expert testimony that the subject property as currently zoned was valued at $2.83 million. Defendants' expert did not offer any opinion as to the value of the property but testified instead that the property's highest and best use would require it to be subdivided into multiple half-acre lots, although the property was in a zone that permitted lots of no fewer than three acres. The jury returned a verdict of $4.5 million as compensation for the defendants, and the Appellate Division affirmed.

As we explained in Borough of Saddle River v. 66 East Allendale, LLC, evidence that risks misleading the jury into assuming a zoning variance for purposes of calculating a property's value must not be admitted absent a judicial finding it is reasonably probable that the variance will be obtained.

2

216 N.J. 115, 142 (2013). We therefore hold that the trial court erred by allowing the jury to consider testimony that the highest and best use of the subject property would require a variance without first confirming the probability of securing that variance. Accordingly, we reverse the judgment of the Appellate Division and remand for a new trial.

I.

Defendants' property, a 48.94-acre tract of land, was in an area zoned as R20 (residential) until 2002, when the Township rezoned it to RE (residential environmental). As relevant here, the difference between those zones is that the R20 zone allows for single family dwellings on half-acre lots, whereas the RE zone provides for single family dwellings on lots of no fewer than three acres. As noted by defense expert Paul Phillips, land in the R20 zone could yield "up to six times the density of the [same amount of land in] RE [three-acre] zoning." Therefore, undivided land in an R20 zone would have a greater fair market value than the same land in an RE zone.

After a nearly decade-long dispute between the parties, the details of which are not relevant here, the Township commenced condemnation

3

proceedings.[1] The court appointed condemnation commissioners to hear the matter; they issued a report awarding defendants $3.6 million in compensation for the taking.[2] The Township appealed, and the case went to trial before a jury to determine the subject property's fair market value. The trial record reveals admission of the following evidence for consideration by the jury.

The Township's expert appraiser, James Stuart, explained that, in arriving at his estimate of $2.83 million, he assumed the continued application of the current RE zoning (permitting no more than twelve single-family lots on the subject property) and evaluated the property by reference to the sale price of similar properties. He acknowledged, however, that unlike the subject property, the properties he used for comparison did not have sanitary sewer or municipal water systems, and that, if the subject property were to yield more

---

[1] Defendants subsequently filed a counterclaim alleging inverse condemnation, but the court dismissed defendants' claims before trial and we denied defendants' cross-petition for certification, see 239 N.J. 520 (2019).

[2] "Upon determination that the condemnor is authorized to and has duly exercised its power of eminent domain, the court shall appoint 3 commissioners to determine the compensation to be paid by reason of the exercise of such power." N.J.S.A. 20:3-12(b). "Within 4 months next following their appointment, or within any extended period in accordance with the rules, the commissioners, or a majority of them, shall make and file in form and content fixed by the rules, an award fixing and determining the compensation to be paid by the condemnor." N.J.S.A. 20:3-12(g); see also R. 4:73-4. "Any party who has appeared at the hearings of the commissioners, either personally or through an attorney, may appeal from the award of the commissioners." N.J.S.A. 20:3-13(a); see also R. 4:73-6.

than twelve lots, "you've got a whole different ball game" in terms of property valuation.

The Township also offered the expert testimony of planner Jennifer Beahm, who noted that the subject property is surrounded by an R20 zone and that a zoning variance would be necessary to use the subject property in ways not otherwise permitted in its current RE zone.

By contrast, defendants' expert planner Paul Phillips opined, over the Township's objection, that the highest and best use of the subject property would be to divide it into smaller lots, as would be permitted in an R20 zone. He explained that such use of the property would yield "up to six times the density" than under the current RE zoning, although he noted that, "for R20 zoning to be on the [subject] property[,] the Township committee would have to agree to change the zone."

Importantly, Phillips did not offer any opinion about the value of the property as is or if a variance were granted, or even about the probability that such a variance would be granted. Indeed, in ruling on the Township's objection to his testimony, the court cautioned Phillips not to "opin[e] on possibilities or likelihoods or odds or procedures about getting variances."

The Township moved for judgment at the close of evidence, noting that the only issue in the case was the property's value and that the only expert

valuation of the property was Stuart's estimate of $2.83 million. The court

granted the motion in part, ordering defense counsel not to argue in closing

that, when calculating the property's value, the jury could assume a variance

will be granted. However, the court also denied the motion in part, holding

that reasonable minds could differ on the value of the property because Stuart

conceded that the property could yield more than twelve lots. Accordingly, the

court allowed the question of fair market value to go to the jury.

During closing, without expressly inviting the jurors to take a variance

for granted when evaluating the property, defense counsel reminded them that

the subject property is surrounded by an R20 zone. He also repeatedly

referenced the possibility of rezoning the subject property, observing that,

> at least under the current zoning we can get fourteen[3]
> lots [on the Gentile property, and that] . . . if anybody
> wanted to do anything with respect to these lots, they
> would have to go [to] the Zoning Board. . . . So that's
> I think an important consideration for you.

The court instructed the jurors that they "must decide the market value

of the [subject] property after comparing and considering all the evidence

using the expert opinions," if they "find those opinions helpful." The judge

instructed that if, on the other hand, the jurors were to reject all expert

---

[3] Defense counsel misspoke: the record demonstrates that the property could
be divided into only twelve lots under the current RE zoning.

testimony, then they could "come up with another figure for the fair market value of the property," so long as that figure is based on the evidence presented. The jury returned a unanimous verdict awarding defendants $4.5 million for their condemned property.

The Township filed post-trial motions for judgment notwithstanding the verdict and for a new trial, claiming that our decision in 66 East Allendale required the trial court to conduct an N.J.R.E. 104 hearing as to the reasonable probability of a variance before admitting any testimony by defendants' expert that the subject property's highest and best use would require R20 zoning. The court denied those motions, and the Township appealed.

The Appellate Division affirmed, holding in relevant part that the trial court "properly exercised its discretion by allowing defendants' planning expert to testify in a limited manner." The court found that a Rule 104 hearing was not necessary under 66 East Allendale because Phillips "did not make any speculative comments regarding the likelihood of defendants' obtaining a variance," having instead opined only that defendants' property is best suited for a use that would require a variance. Relatedly, the court also held there was no error in denying the Township's motions for judgment and for a new trial, since some evidentiary basis existed for the jury to deviate from Stuart's estimate of $2.83 million -- Stuart took for granted that the property could be

7

divided into no more than twelve lots, and the properties he looked to for comparison, unlike the subject property, did not have sanitary sewer or municipal water systems.

We granted the Township's petition for certification, "limited to the issue of whether the Appellate Division erred in concluding that a plenary hearing regarding the 'reasonable probability' of a zoning change was not required before the commencement of trial." 239 N.J. 495 (2019).

II.

The Township argues that by permitting the defense expert to testify that the highest and best use would require a variance -- without first holding a Rule 104 hearing to determine if there is a reasonable probability the variance would be granted -- the trial court admitted testimony likely to mislead the jury into calculating the property's value with an assumption that the variance would be granted. The Township concludes that the trial court neglected its role as gatekeeper by admitting that evidence without regard for the procedures and standards laid out in 66 East Allendale, resulting in a groundless $4.5 million verdict that the Township asserts shocks the conscience.

Defendants distinguish this case from 66 East Allendale on the basis that, there, testimony about the likelihood of a variance being granted was

8

offered but lacked a proper foundation whereas, here, the defense expert testified only that the property's highest and best use would require a variance without ever testifying about the probability of securing such a variance. Defendants also point out that the jury had reason to doubt the credibility of Stuart's valuation of the property at $2.83 million because Stuart acknowledged that, when calculating that number, he compared the property to others that lacked sanitary sewer or municipal water systems and took for granted that the subject property would be divided into no more than twelve lots. Thus, defendants assert there is no need to assume that in reaching its verdict the jury improperly relied on testimony about the variance.

## III.

"The standard of review on appeal from decisions on motions for a new trial is the same as that governing the trial judge." Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011). Thus, to determine whether the Township is entitled to a new trial based on the record before us, we consider whether denying a new trial "would result in a miscarriage of justice shocking to the conscience of the court." Id. at 521 (quoting Kulbacki v. Sobchinsky, 38 N.J. 435, 456 (1962)); see also R. 4:49-1(a) ("The trial judge shall grant the motion if, having given due regard to the opportunity of the jury to pass upon

9

the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law.").

We therefore must determine whether allowing the jury to consider evidence that the property's highest and best use under R20 zoning could yield "up to six times the density" under the current RE zoning, without first determining whether there was a reasonable probability that the property would be rezoned, resulted in a miscarriage of justice. We do so by considering the applicable constitutional and statutory provisions, as well as our jurisprudence.

## A.

A municipality, like the Township here, has the authority to take private property for a public use provided that just compensation is paid to the property owner. See U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."); accord N.J. Const. art. I, ¶ 20; N.J.S.A. 20:3-29 (a section of New Jersey's Eminent Domain Act, N.J.S.A. 20:3-1 to -50, providing that a "condemnee shall be entitled to compensation for the property, and damages, if any, to any remaining property, together with such additional compensation as provided for herein, or as may be fixed according to law").

"Just compensation is 'the fair market value of the property as of the date of taking . . . .'" Comm'r of Transp. v. Caoili, 135 N.J. 252, 260 (1994) (quoting Comm'r of Transp. v. Silver, 92 N.J. 507, 513 (1983)). The fair market value generally considers "the property's highest and best use," ibid., which can be described as "the use that at the time of the appraisal is the most profitable, likely use" or, in the alternative, "the available use and program of future utilization that produces the highest present land value," so long as that use has "a probability of achievement," Hous. Auth. of New Brunswick v. Suydam Inv'rs, L.L.C., 177 N.J. 2, 20 (2003) (quoting County of Monmouth v. Hilton, 334 N.J. Super. 582, 587 (App. Div. 2000)). "To constitute the 'highest and best use,' a use must be '1) legally permissible, 2) physically possible, 3) financially feasible, and 4) maximally productive.'" Ibid. (quoting Hilton, 334 N.J. Super. at 588).

Whether potential zoning changes might be considered in determining a property's best use or whether such consideration would run afoul of the "legally permissible" requirement is a question this Court addressed in Caoili. There we held,

> consistent with our decision in Gorga, that in determining the fair market value of condemned property as a basis for just compensation, the jury may consider a potential zoning change affecting the use of the property provided the court is satisfied that the

11

> evidence is sufficient to warrant a determination that such a change is reasonably probable. If evidence meets that level of proof, it may be considered in fixing just compensation in light of the weight and effect that reasonable buyers and sellers would give to such evidence in their determination of the fair market value of the property.
>
> [135 N.J. at 265 (emphasis added) (relying on State Highway Comm'r v. Gorga, 26 N.J. 113 (1958)).]

In 66 East Allendale, this Court applied those principles in the context of a purported highest and best use that could be achieved only if a variance were granted. In that case, the defendant and the Borough of Saddle River disputed the fair market value of the defendant's property. 216 N.J. at 125. The defendant proposed "that the highest and best use of the property would be a bank," ibid., but that proposal would have required a variance, id. at 121-22. The defendant had previously applied for the requisite variance in seeking a development permit but withdrew its permit application upon encountering opposition to the proposed development. Id. at 121-22, 143. Nevertheless, at trial, the defendant submitted expert reports and testimony indicating the experts' belief that the bulk variance would be granted. Id. at 126-29.

The Borough of Saddle River moved to strike the defendant's experts' opinions "on the reasonable probability of a zoning change," arguing that those opinions failed to address the standards under which a bulk variance

application would be reviewed and, therefore, "lacked a proper foundation." Id. at 123. Alternatively, the Borough asked for a Rule 104 hearing to assess whether there was a reasonable probability that the property would be rezoned. Ibid. The motion court denied those requests, ibid., and, following a jury trial, entered judgment in the defendant's favor, id. at 133. The Appellate Division affirmed. Id. at 134-36.

We reversed, holding that because neither the trial court nor the experts analyzed whether "there exists the reasonable probability of a zoning change based on the standard that would govern the particular zoning change under consideration," the trial court neglected its gatekeeping function by leaving the determination of probability to be made at trial. Id. at 142-43.

We specified that, notwithstanding any expert opinion as to the likelihood a variance will be granted,

> only when the trial court has first determined that the evidence is of a quality to allow the jury to consider the probability of a zoning change should the jury be permitted to assess a premium based on that zoning change . . . . The gatekeeping function was assigned to the judge specifically to screen the jury from hearing mere speculation.
>
> [Id. at 142 (citing Caoili, 135 N.J. at 264-65).]

And we explained that, in order to be relevant to the issue of a property's fair market value, evidence presupposing a variance must be more than merely

13

speculative.  Id. at 138.  Our rule did not discriminate between speculative and irrelevant evidence -- neither is invited through the gate.  Accord Caoili, 135 N.J. at 264 ("The risk of unsound and speculative determinations concerning fair market value is real when that determination is based on evidence of a future change that is inherently vague or tenuous because it suggests no more than the possibility of change. . . .  The court can [reduce that] risk by performing, in effect, a gatekeeping function by screening out potentially unreliable evidence and admitting only evidence that would warrant or support a finding that a zoning change is probable.").

Though there was some expert testimony in 66 East Allendale as to the probability that the municipal body would grant the variance necessary for the proposed use of the property, 216 N.J. at 130-32, our courts have properly recognized that case's broader significance by applying its gatekeeping procedures and standards even when no evidence is presented regarding the probability of obtaining a variance, see, e.g., N.J. Transit Corp. v. Franco, 447 N.J. Super. 361, 373, 377-78 (App. Div. 2016) (relying on 66 East Allendale to find "legally inadequate" the opinions offered by the defendants' experts, who did not "show a reasonable probability Weehawken would either grant a use variance for the cul-de-sac or accept the dedication of the cul-de-sac as a public street").  In short, with or without expert testimony as to the probability

14

of a variance, trial courts must guard against evidence likely to mislead juries into calculating a property's fair market value at its highest and best use under an unsupported assumption that a variance will be granted.

From 66 East Allendale, therefore, derives the following overarching approach to predicating highest and best use analyses on not-yet-obtained zoning variances. A use that does not conform to current zoning is not legally permissible and so cannot be a property's highest and best use. See 216 N.J. at 137. However, while a property's highest and best use "is ordinarily evaluated in accordance with current zoning ordinances[,] [c]ertain circumstances may permit valuation to include an assessment of a change in the permitted use of a property, but only if there is a reasonable probability that a zoning change would be granted." Id. at 119. That substantive determination of probability must account for "the standard that would govern the particular zoning change under consideration."[4] Id. at 143. In making that determination, the trial court must examine the parties' evidence as to the probability of the zoning change to "determine whether [the court] can render its required determination based on the papers." Ibid. If that determination cannot be made on the written

---

[4] The Township's Board of Adjustment has discretion to grant variances to an applicant who satisfies certain conditions and who follows procedures laid out in Township ordinances. Township of Manalapan, Development Regulations of the Township of Manalapan § 95-4.4 (citing N.J.S.A. 40:55D-70).

15

submissions alone, the court shall conduct a pretrial Rule 104 hearing to resolve the issue. Id. at 142-43.

### B.

The question before this Court -- whether it was error to admit testimony that the condemned property's highest and best use for purposes of valuation would be one for which a variance would be necessary without first determining that there is a reasonable probability that such a variance would be granted -- was answered in 66 East Allendale.

In this case, the evidence about a variance is as follows: After plaintiff's expert appraiser Stuart opined that, under current zoning, the property value would be $2.83 million, plaintiff's expert planner Beahm testified that the property was located in the RE zone and that it could not be used as though it were in the R20 zone, like surrounding properties, without first obtaining a variance. Next, after the trial court forbade defendants' expert planner Phillips from "opining on possibilities or likelihoods or odds or procedures about getting variances," he testified that the highest and best use of the property would require R20 zoning, which could yield "up to six times the density of the underlying RE three[-]acre zoning." However, Phillips conceded on cross-examination that "for R20 zoning to be on the [subject] property[,] the Township committee would have to agree to change the zone." Nevertheless,

16

during closing argument defense counsel referenced how the subject property is zoned differently than the surrounding properties, reviewed types of variances that could be secured with municipal approval, and emphasized the absence of certain barriers to modifying applicable land use regulations.

The trial court here neglected its role as gatekeeper by letting the jury consider evidence about a variance without following the procedures and standards laid out in 66 East Allendale. That case stands for more than the proposition that speculative testimony about the probability of obtaining a variance should not be allowed to reach a jury. That is but one way in which the harm 66 East Allendale identifies and seeks to prevent can occur. Another is what happened here: the jurors were invited to set a valuation based on a highest and best use that would require a variance without any judicial consideration of the probability of obtaining that variance. Whether the jurors are allowed to consider speculative expert testimony or invited to supply their own speculation, the result is the same: evidence not demonstrated to be reliable or relevant is put before the jury. The application of 66 East Allendale by the trial court, which the Appellate Division affirmed, departed from the letter and undermined the spirit of that case.

Here, because there was no finding that a variance from RE to R20 would likely be granted, the jury should not have been permitted to evaluate

17

the property on any basis other than its highest and best use "in accordance with <u>current</u> zoning ordinances." See <u>66 East Allendale</u>, 216 N.J. at 119 (emphasis added). Testimony about a hypothetical highest and best use was unreliable and misleading because its relevance presupposed an R20 use variance without evidence that the variance was likely to be granted. Given the state of the evidence in this case, a Rule 104 hearing would have been necessary to make a finding as to the likelihood of obtaining the variance, but the trial court never held that hearing or made that finding.

The result was that "the quality of the evidence that the jury was allowed to consider undermined the soundness of the jury's property valuation." <u>Ibid.</u> Given that the only opinion put before the jury as to the value of the property was that of plaintiff's expert appraiser, who valued the property at $2.83 million based upon RE zoning, the jury's $4.5 million verdict was a manifest miscarriage of justice that shocks the conscience and requires a new trial.

IV.

In light of the foregoing, the judgment of the Appellate Division is reversed, and the matter is remanded for a new trial. On remand, if defendants seek once again to admit testimony that the condemned property's highest and best use for purposes of valuation would be one for which a variance would be necessary, the trial court must conduct a Rule 104 hearing to determine

18

whether there exists a reasonable probability that a variance would be granted. Only if the court makes that finding may the jury consider, for valuation purposes, uses of the subject property that would require a zoning variance. See id. at 142.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON'S opinion.

19